IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| William J. Moore, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:05-cv-1065 |
| Abbott Laboratories, et al., | : | JUDGE WATSON |
| Defendants. | : | |

OPINION AND ORDER

    In this employment discrimination case, plaintiff William J. Moore claims that, after his job was eliminated by Defendant Abbott Laboratories, he was not rehired for a substantial period of time because Abbott considered his age in the rehiring process.  He did eventually obtain new employment with Abbott. Mr. Moore has requested that Abbott answer interrogatories and produce documents concerning a host of matters, some of which pertain to the decision-making processes involved in his efforts to obtain re-employment, and some of which pertain to practices and policies of Abbott on a company-wide basis.  Because the parties were not able to resolve their dispute over the appropriate scope of these discovery requests, Mr. Moore filed a motion to compel discovery.  Responsive and reply memoranda have been filed.  This Opinion and Order constitutes the Court's ruling on the motion to compel.

I.

    The Court begins with some general observations.  First, the sheer volume of discovery requests which are the subject of the motion to compel, many of which have little or nothing to do with the parties' dispute about the appropriate scope of company-wide discovery, are an indication that the parties have not engaged in

a good faith extrajudicial effort to resolve discovery disputes.

Second, the substantive content of the briefing by the parties on these issues bears out that initial assessment. Much of the briefing, particularly as it relates to document requests other than those seeking company-wide discovery, is so vague that the Court can neither determine that the parties actually discussed the requests after Abbott responded to them or what disagreement, if any, exists between the parties with respect either to the discoverability of the documents or the completeness of the production. It is not the Court's function to make general pronouncements about discovery issues, but to resolve concrete disputes between the parties concerning actual discovery requests and actual discovery responses. In many cases, the Court finds itself unable to do so.

A few brief examples illustrate why the Court cannot, and therefore will not, include a number of plaintiff's discovery requests in this ruling. Document Request #21 from Mr. Moore's first set of document requests asked Abbott to produce all documents describing the qualifications, job requirements, and job descriptions for certain positions for which he applied. The totality of the argument in support of a motion to compel is that "[d]efendants previously stated that they would produce the job description in addition to the requisitions for the positions for which plaintiff applied." Abbott responded by stating that it produced "numerous documents" in response to this request including job requisition histories which, according to Abbott, contain the job descriptions. Abbott notes that the brief in support of the motion to compel "fails to explain in what way the information Mr. Moore has received is deficient." The reply memorandum (which is itself 38 pages long) states that Abbott has provided "no explanation as to why [it] failed to produce the job descriptions for the positions which plaintiff applied." Because

there does not appear to be any dispute between the parties over the relevance of the job descriptions, the Court is left with an assertion on one side that job descriptions were produced, and an assertion on the other side that they were not, without any evidence that the parties talked about this issue and made an effort to determine why they have differing views on what has or has not been produced.

The same can be said of the dialogue between the parties with respect to Document Requests 2 and 11 of the second request for production.  Again, Abbott claims to have produced all of the information whereas Mr. Moore claims that it did not.  The argument on this issue concludes with the following statement: "Plaintiff fails to understand defendants' fear of an order to compel discovery if they have produced all the requested data and information."  (Reply memorandum, at 35).  Of course, if all the requested information has been produced, there is no need for an order compelling discovery.  The problem is that the Court simply cannot determine if Abbott's response is complete or if it is deficient.

The Court could give additional examples, but rather than go through each of these matters individually, the Court will simply identify for the parties those interrogatories and document requests concerning which the parties' arguments are too vague and conclusory to permit the Court to make a reasoned decision. If the parties wish to pursue further court intervention with respect to these issues, they must first engage in a discussion (preferably at an in-person meeting) about what specific additional information Mr. Moore believes that Abbott has in its possession which has not been produced.  Any further motion to compel shall be accompanied by a specific affidavit dealing with each of the requests, the nature of the discussions had, and the precise points about which the parties have reached impasse.

II.

The area where the parties have clearly reached impasse relates to the proper scope of company-wide discovery.  Mr. Moore has requested documents and other information about: (1) applicants for sales, marketing, and training jobs; (2) charges, claims, lawsuits, or allegations made against Abbott based upon age; (3) people involved in the "priority consideration" program which Mr. Moore became a part of; (4) demographic information about Abbott's sales, training, and marketing employees; (5) organization charts and succession plans for the sales, marketing, and training functions of the company; (6) certain statistics for Abbott's entire work force; (7) plans or goals for Abbott's work force; and (8) any internal reviews of its hiring practices.  Although some of these requests are limited to certain types of positions, they are not generally limited to any specific geographic location.  Information is requested ranges going back several years prior to the April through October, 2005 time frame and up to the present.  A number of the requests seek not only basic information about people, positions, hiring decisions, or practices, but also production of each and every document relating to these topics.  As an example, Mr. Moore has sought the entire work history of each person involved in the priority consideration program from at least January 1, 2003 to the present, regardless of where those employees worked or what positions they applied for.  A more detailed examination of these requests will occur below.

A.

In order to evaluate the propriety of these various requests, it is important to focus on the specific claims being made by Mr. Moore in this case.  After Mr. Moore worked for Abbott for a number of years, his job was eliminated.  He was placed into the priority consideration program, which presumably

meant that he would receive special consideration to be rehired by Abbott in the event that a position for which he was qualified became open.  He applied for twelve positions from approximately March through October of 2005.  All of these positions were located in Columbus, Ohio.  They included sales trainer jobs, pharmaceutical representative jobs, or retail sales representative jobs.  He claims that he was passed over for a number of these positions because of his age.  Abbott did eventually rehire him, however, and he has worked with the company as a medical nutritional sales trainer since he was rehired.

B.

Employment cases, in particular, invite the type of dispute which is presented here.  Although most single-plaintiff employment cases involve either a single adverse employment action (such as a failure to hire, failure to promote, demotion, or discharge) or, as here, a series of such events, those events usually occur within a limited time frame, at one or a limited number of geographic locations, and involve one or a limited number of managerial personnel and managerial decisions. Nevertheless, most employment discrimination plaintiffs operate on the premise that the discriminatory factors which they believe influenced their employer's actions toward them have similarly influenced the employer when dealing with other employees. Courts have usually permitted an employment discrimination plaintiff both to discover, and to introduce at trial, some evidence about the employer's behavior toward other similarly-situated employees.  The theory supporting such discovery or admission of evidence is that if a particular manager or a particular hiring policy or practice was motivated by an animus against certain classes of employees, that bias would be evident in other decisions made by that manager or influenced by those

policies and practices.  Thus, for example, if an individual hiring manager has a bias against women, it would be reasonable to expect that such a bias would also influence other hiring decisions made by the same manager.  See, e.g., Mendelsohn v. Sprint/United Management Co., 466 F.3d 1223 (10th Cir. 2006), cert. granted 127 S.Ct. 2937 (2007).

When dealing with a small employer who operates from a single location and has a relatively uniform work force, company-wide discovery may well be appropriate.  On the other hand, no one would seriously argue that all of the hiring decisions made by a large national or multi-national company with respect to every geographic location and every business line which the company pursues should be fair game for discovery in a single-plaintiff case.  Thus, the Court must necessarily draw a line between company-wide discovery which is appropriate (including limitations on time, geography, and types of positions or hiring decisions) and that which is not.

There are two related bases for limiting the scope of the type of discovery involved in this case.  One requires the Court to draw a line between evidence which is falls within the general scope of discovery described in Federal Rule 26(b)(1) and evidence which does not.  That Rule allows a party to obtain discovery of any matter relevant to the claim or defense of any party.  It clarifies that relevant information need not be admissible at trial so long as it is "reasonably calculated to lead to the discovery of admissible evidence."

As the last sentence of Rule 26(b)(1) states, however, "[a]ll discovery is subject to limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."  In this context, the most significant of those limitations is the one contained in Rule 26(b)(2)(iii), which states that discovery should not be permitted if "the burden or expense of the proposed discovery

6

outweighs its likely benefit, taking into the account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of a proposed discovery in resolving the issues." This limitation, which recognizes that the Court may act in a common sense fashion to circumscribe discovery to that which is reasonable and necessary to serve the purposes of the case at hand, is often invoked in the context of broad discovery requests made in employment discrimination cases.  See, e.g., Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516 (D.Minn. 1997); see also In re Convergent Tech. Securities Litigation, 108 F.R.D. 328, 331 (N.D. Cal. 1985)(once the threshold requirement of relevance is established, "counsel *also must* make a common sense determination, taking into account all the circumstances [and] that the information sought is a sufficient potential significance to justify the burden the discovery probe would impose, that the discovery tool selected is the most efficacious of the means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought...").  These general principles inform the Court's consideration of the present motion to compel.

C.

Obviously, the above principles require the Court to conduct some type of comparison between the nature and location of the employer's hiring decisions at issue in the case and the scope of the information which the plaintiff has requested.  This comparison allows the Court to determine what information is of central relevance, and what is of peripheral relevance, to the plaintiff's claims, and also assists the Court in performing the cost-benefit analysis mandated by Rule 26(b)(2)(iii).  The Court's understanding of those facts comes either from affidavits

7

or declarations filed in this case or statements made in the supporting, opposing or reply memoranda which the parties do not appear to dispute.

The hiring decisions at issue relate to between nine and twelve positions.  Although Mr. Moore applied for twelve positions before being rehired, according to Abbott, two of those job postings were canceled and a third remained open at the time Mr. Moore was rehired.  However, even assuming that all twelve jobs are at issue, Mr. Moore's applications were limited to four of the 20 divisions of Abbott Laboratories: the Nutrition Division, the Pharmaceutical Products Division, the Diagnostics Division, and the Diabetes Care Division.  All of the positions he applied for were located in Columbus, Ohio.  The hiring decisions were made locally, although there were twelve different hiring managers involved.

Abbott is a multi-national corporation.  At any one time, it has roughly 60,000 employees.  They work in 20 separate divisions.

Although Abbott does have computerized databases of information relating to its employees, such databases cannot be searched in the same manner that an internet search can be conducted through a search engine such as Google or Yahoo.  So, for example, even though there were a number of other Abbott employees besides Mr. Moore who were placed into the priority consideration program, the databases cannot be searched simply by keying in a phrase such as "priority consideration."  Rather, a manual search to identify the names of each employee in the program would have to be conducted, and an exhaustive search of computer databases would have to be made using the employee's name to determine what positions the employee applied for.  Other time-consuming searches would have to be made to locate files containing the names of other applicants, job descriptions, and

details of the hiring process and decision.

During the time that the priority consideration program was in place, there were hundreds of former Abbott employees in the program.  Thousands of people applied for the same jobs for which the priority consideration program participants applied.  Although Abbott has not directly stated this, it seems likely that many of the priority consideration employees applied for jobs outside of Columbus and outside of the four divisions to which Mr. Moore submitted an application.  It is certainly true that, if the universe of job applicants is expanded beyond those on the priority consideration list, during the course of even a single year Abbott would receive thousands or ten of thousands of job applications and go through a large number of hiring processes.  Again, not all of those applications or hiring processes would occur either within the divisions which had posted the jobs for which Mr. Moore applied or for jobs in Columbus, Ohio.

At the risk of overgeneralizing, the majority of courts which have addressed similar issues in employment discrimination cases presume that if hiring decisions are made locally, discovery should generally be restricted to the same level.  Thus, "[t]he clear guidance provided by these cases is that discovery may appropriately be limited to employment units, departments and sections in which employees similarly situated to plaintiff are employed."  Obiajulu v. City of Rochester, Department of Law, 166 F.R.D. 293, 296 (W.D. N.Y. 1996), citing, *inter alia*, Scales v. J.C. Bradford & Co., 925 F.2d 901 (6th Cir. 1991).  This Court has applied those principles generally to limit discovery about hiring decisions at a local unit of a national company to that local unit unless there is evidence that the hiring decisions were made either regionally or nationally, as opposed to locally, or unless there is evidence that there

9

were regional or national policies in place germane to those decisions.  See, e.g., Barr v. Smith & Wollensky Restaurant Group, 238 F.R.D. 222 (S.D. Ohio 2006)(Kemp, M.J.). Additionally, the Court may limit such discovery not only to the geographic regions and employment units or departments which are most relevant to the plaintiff's claim, but also to a window of time surrounding the hiring decisions.  See Miller v. Federal Express, 186 F.R.D. 376 (W.D. Tenn. 1999).  Given these general principles, coupled with the directive under Rule 26(b)(2)(iii) to perform a cost-benefit analysis, this Court also presumes that the most relevant evidence concerning employment decisions is evidence of other decisions made by the same or similar decision-makers concerning similarly-situated job applicants in the geographic region of the company's operation where the plaintiff applied for employment and in a time frame (usually between three and five years) surrounding the relevant hiring decisions.  The questions then become: (1) is there some reason to depart from this rule in the case at hand; and (2) if the rule is applied to the case at hand, to what extent is the plaintiff entitled to discovery beyond that already provided?  The Court will address each of these questions in turn.

D.

The three most significant issues raised by the discovery requests at issue are: (1) geography (Columbus or company-wide); (2) divisions (the four divisions in which plaintiff applied for a position or all 20 divisions); and (3) time.  Most of the discovery requests, such as those asking for information about job applicants, claims, charges, allegations, or lawsuits against Abbott, persons in the priority consideration program, work force demographics, organizational charts, and succession plans cut across all locations and divisions of Abbott.  A few, such as the requests for information about job applicants, organizational

10

charts and succession plans, are limited to people in the sales, marketing, and training areas, although these requests also ask for information on a company-wide basis and are not limited to Columbus.  Another request, asking for personnel documents for all medical nutrition specialists (the position previously held by Mr. Moore) is also company-wide, although it is limited to one particular job classification.  The dates of the information requested ranged from either 1999 or 2001 to present in the original formulation of the requests, although Mr. Moore has agreed to limit his request for information in most cases to the five years from January 1, 2003 to the present.  There are still some requests for which he asks for information from January 1, 2001 to the present, such as the demographics of Abbott's sales force and the assertion of claims, charges, allegations or lawsuits against Abbott on account of age.

    Despite the breadth of these requests for information, Mr. Moore apparently does not dispute that he applied for positions only in Columbus, only in the four divisions identified by Abbott, and only during calendar year 2005.  He also does not dispute that the decision to hire someone other than him for at least nine of these positions was made by a decision-maker based in Columbus.  Despite having taken a number of depositions and having received documents relating to each of these hiring decisions, he has not argued that either the decision-making processes of these local managers or their specific hiring decisions were reviewed by, or influenced by, Abbott officials at regional or national levels.  Thus, other than the fact that there are between nine and twelve individual hiring decisions at issue in this case, whereas other single-plaintiff cases typically involve fewer such decisions, this appears to be a prototypical case involving local decision-making. Consequently, the principles cited above strongly suggest that discovery be

limited to both the geographic location where the decisions were made (i.e. Columbus) and the four divisions of Abbott in which those decisions were made.

In terms of time, because an employment discrimination plaintiff who wishes to make a statistical case must have a certain amount of longitudinal information from which to conduct statistical studies, this Court has typically approved a discovery period of between three and four years, depending upon the length of time during which the decision or decisions at issue were made.  Here, as best as the Court can determine from the parties' filings, the critical decision-making period involved in this case is between April and October, 2005.  Because the case does involve multiple decisions made over a period of time rather than a single decision made on a specific date, the Court believes that four years of statistical information is reasonable.  The discovery which should be made available for that time frame includes other hiring decisions made by the same managers involving persons applying for the same or similar positions as those for which Mr. Moore applied, age-based statistical information about the persons actually hired as compared to the applicant pool for those positions, and age-based demographics relating to the composition of Abbott's work force in these areas over that four-year period.  Information for other locations, about hiring decisions made by other decision-makers, or for earlier time frames is either irrelevant or so peripheral to Mr. Moore's claim as to make its production cost-prohibitive.

E.

Applying these parameters to the discovery which has occurred in this case, it appears that Mr. Moore is entitled to additional discovery.  The Court concludes from Abbott's memorandum that it has produced documents relating exclusively to the twelve positions for which Mr. Moore applied and has resisted

12

supplying information beyond that.  Thus, the gap which exists in this case between what the Court concludes is discoverable and what has been produced is information about the hiring decisions made by the individual decision-makers within the four divisions at issue from April 28, 2003, through roughly the present.  That information should include documents identifying job applicants for the types of positions involved, including the age of those applicants if that information is available, and records about the selection process which would enable Mr. Moore to determine whether some pattern of age-based decision-making can be teased out of the documentation.  A statistical breakdown of the persons employed in those positions for the same time frame should be provided, at least on a yearly basis, and Abbott should produce documents reflecting any charges, allegations, claims, or lawsuits leveled against it on account of age discrimination within these divisions, and for those positions, for that four-year time frame.  Presumably, if this information is produced, it will include information about other applicants who, like Mr. Moore, were in the priority consideration program to the extent that they applied for the same or similar positions as he did.  If there are organizational charts or succession plans for these divisions which have not been produced, they are also subject to production.

There are local documents which do not appear relevant, however.  For example, the Court does not believe that there is any basis for requesting the personnel files of other persons holding the medical nutrition specialist position (especially because that is not the position in to which Mr. Moore was rehired) or personnel files about other individuals within the company beyond information which might reflect job applications, job qualifications, or the age of those individuals.  Obviously, to the extent that Mr. Moore has requested information going

beyond what is described above, the Court concludes that he is not entitled to that information.

### III.

As noted in the introductory section of this Opinion and Order, the Court is aware there are a myriad of additional issues raised by the motion to compel. As the Court also noted, most of them are not in a posture which permits the Court to make a decision about whether additional information should be produced or, indeed, whether there is any additional information available. The Court does agree that to the extent Mr. Moore has requested, for example, production of entire hard drives from the computers of persons involved in the decision-making process, that request is much too broad. The Court relies upon litigants to identify responsive documents, wherever they may be located, and to produce them. If, through deposition or otherwise, Mr. Moore learns that searches for documents have been less then thorough and that there may be additional documents located on hard drives or at other places within Abbott's system, he should first request that an additional search be undertaken. If that produces no documents, he may take discovery on the details of any additional search. If he is dissatisfied with that process, he may apply to the Court for additional relief. He may also pursue other issues raised in the motion to compel, but only after following the procedure described in Section I above.

### IV.

Based upon the foregoing, plaintiff's amended motion to compel discovery (#53) is granted in part and denied in part. Defendant Abbott Laboratories shall produce additional information, responsive to existing discovery requests, as set forth in Section II of this Opinion and Order. That production shall occur within 30 days. All other relief requested in the motion to compel is denied. However, with respect to matters

where it is simply unclear whether all available documentation has been produced, and where defendant Abbott Laboratories has not objected to the relevance of the information requested, the parties are encouraged to confer face-to-face to determine whether there are any deficiencies in the document production or interrogatory answers in these areas.  Further motions practice (or, preferably, a conference with the Court) may be conducted if the parties reach impasse.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge