IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William J. Moore,            :

    Plaintiff,           :

  v.                         :     Case No. 2:05-cv-1065

Abbott Laboratories, et al., :     JUDGE WATSON

    Defendants.          :

## OPINION AND ORDER

This somewhat contentious employment discrimination case is before the Court to consider a motion to compel discovery filed by plaintiff, William J. Moore. Earlier this year, the Court conducted a hearing to determine which issues raised in the motion to compel should be addressed by Abbott Laboratories' responsive brief. After that hearing, Abbott filed a response and Mr. Moore filed a reply. This Opinion and Order constitutes the Court's ruling on the motion to compel.

I.

When this lawsuit began, Mr. Moore had lost his job with Abbott as part of a reduction in force. He claimed in his initial complaint that he was placed into a group of similar employees and promised special consideration if Abbott decided to rehire any of these employees. He did apply for new positions at Abbott. However, he contends that Abbott discriminated against him in the rehiring process due to his age.

After being turned down for a number of positions with Abbott, Mr. Moore was rehired. He now claims that he has been discriminated against during his most recent employment and

retaliated against because he complained about discriminatory treatment. Ultimately, Mr. Moore claims that he was constructively discharged by Abbott because of the conditions under which he was required to work.

Mr. Moore has consistently sought broad discovery concerning the way in which Abbott administered the "priority consideration" program which he participated in after he first left Abbott's employment in 2005. In November, 2007, the Court issued an order dealing with some of these issues. The current motion to compel addresses some of those issues for a second time, however, and also raises generally the question of the proper scope of discovery requests in a single-plaintiff employment discrimination case. The Court will do its best to interpret exactly what Mr. Moore has asked for, and why, and to determine whether Abbott's response to his requests has been adequate.

II.

The Court begins with a review of some of the discovery which has occurred. Abbott has apparently produced information about the jobs for which Mr. Moore applied and about the managers who made those hiring decisions. After the hearing on this motion, Abbott also produced information about jobs in the relevant region that are similar to the one into which Mr. Moore was rehired, and documents created by or about some of the people involved in the hiring process. It has also produced documents from people who dealt with Mr. Moore.

According to Abbott, it has now produced over 14,000 pages of documents. Some emails relating to Mr. Moore were included in the production. Abbott obtained those emails by reviewing emails written by Mr. Moore's immediate supervisor, her supervisor, and Mr. Moore's human resources contact. That group of emails included 200,000 pages of documents which Abbott was required to review. If Abbott were required to add to its search all company emails which made any mention of Mr. Moore (which is one of the things he appears to request, but far from the only thing), a

very large number of documents would have to be reviewed, most of which would have nothing to do with this case.  It would also cost Abbott about $300,000.00 to review those emails.  Abbott argues strenuously that it has given Mr. Moore more than enough information about his specific claims and that there is no reason to make it spend additional time and money producing documents of little or no relevance to the case.

III.

The Court has struggled with Mr. Moore's motion to compel because the motion, the accompanying memorandum, and the reply memorandum, present arguments that are extraordinarily broad.  Perhaps that is because the underlying discovery requests themselves are extraordinarily broad.  The Court does not completely rule out the possibility that more precisely-tailored discovery requests might eventually lead to the production of additional relevant evidence.  However, the Court is not faced with such discovery requests here.  Consequently, the present posture of the case does not lend itself to an order which delineates the precise scope of additional discovery to which Mr. Moore might be entitled, or even to an order which directs Abbott to provide specific additional discovery beyond that which has already been tendered.  There are a few areas where the Court can make sufficient sense of the motion to compel to be able to direct Abbott either to provide additional discovery or to provide some additional information to Mr. Moore about what might be available, but for the most part, this motion is so amorphous that the Court is unable to grant any relief.

The problem in this case begins with the discovery requests themselves.  It does not appear that Mr. Moore made any effort, particularly as part of his request for production of documents, to confine his requests to information which is reasonably related to his claims or which a court would likely find him to be entitled to.  It does not require many examples to illustrate this point.

The parties agree that Mr. Moore was told that he was to be part of a "priority consideration" program which supposedly benefitted Abbott employees who lost their jobs as a result of a reduction in force. Over the period of approximately one year, from 2005 to 2006, Mr. Moore applied for a number of jobs (approximately 12) with Abbott. One of his claims is that, not only was he not given priority consideration for these positions, but that his age was used against him in Abbott's hiring decisions. Understandably, he wishes to see documents relating not only to the job applications he submitted but also relating to others whom he believed were similarly-situated.

His initial request for documents related to this program asked Abbott to produce all documents relating to the priority consideration hiring process from January 1, 2001 forward. Perhaps fearing that this request, broad as it was, was not sufficiently all-inclusive, he also asked Abbott to produce all documents related to any employees who were given priority consideration, including both employees who were hired and applicants who were not hired. He then asked more specifically for all the applications submitted by these individuals, any performance appraisals they may have received, all of their payroll, tax and benefit documents, any disciplinary reports relating to them, any training information about them, and any information contained on any database relating to all those employees since January 1, 2003. Additionally, he asked Abbott for any correspondence, emails, and memoranda relating to any priority consideration job candidates, regardless of who prepared those memoranda, and any data or reports regarding those candidates, again from January 1, 2003 to the present. He made no effort to restrict this request to any reasonable time frame, any reasonable geographic area, any reasonable number or type of job applicants, or to the type of information which would be most likely to shed light on his claim that his failure to receive 12 specific positions over one calendar year was the result of age

discrimination.

Notwithstanding the obvious overbreadth of these requests, Abbott produced some of this information, including a substantial amount of information about Mr. Moore's own applications, and a lesser amount of information about others who participated in the priority consideration hiring process. Mr. Moore has complained generally about the type of information that was produced, both in response to this and other document requests, a subject addressed in more detail below. He has also been willing to discuss some limited compromise concerning the temporal and geographic scope of the request. However, in his reply brief he asserts that because the priority consideration program was a company-wide policy and because Abbott concedes that it kept records of how this program operated, he is entitled to all of the information which he initially requested. He makes this argument without regard to the fact that these hiring decisions were made by a number of different decision-makers, that many of them were not involved at all in hiring for the positions for which Mr. Moore applied, that many of the positions themselves were dissimilar to ones for which Mr. Moore applied, and that there is no reason to believe that hiring decisions made years before Mr. Moore lost his job because of a reduction in force are pertinent in any way to the decisions made at the time he applied for these jobs.

Mr. Moore has also alleged generally that he was not provided with adequate training for his new position after he was re-hired. He therefore asked Abbott to produce documents about its training program and its trainers. Although he did not recommence his employment with Abbott until 2006, he asked for information going back to 2003 and 2004, including documents reflecting the compensation paid to trainers, including any bonuses or relocation money, any awards they were given, any recommendations that have been made in the training area for cost savings, any efforts to place trainers into other positions, any

documents relating to their evaluations, all of their personnel
documents, all of their calendars, and any documents or notes
relating to trainers, managers in training, or senior trainers.
Again, it appears that he has made no effort, either in his
initial requests or any narrowed requests, to restrict his
discovery to the type of training which he believed he was
entitled to but was not provided.  He has attempted to justify
the breadth of this request by stating that "[I]nformation
regarding goals, performance evaluations and compensation of
managers within the area is relevant as several of these
individuals were hired in the same time frame and their area of
responsibilities overlap with plaintiff's as well as having
culture, supervision and management responsibilities that
directly impact plaintiff and which would be reflected in their
personnel documentation including goals, reviews, and
compensation awards."  Plaintiff's reply memorandum, at 21.

Mr. Moore also asked for a wealth of information about
Abbott's human resources practices.  In support of that request,
he advances a similar argument, contending that all the human
resources documents he requested impacted "the employment
environment, management and plaintiff's claims."  Reply
memorandum, at 8.  Much the same argument is made with respect to
organizational charts, which he seeks on a company-wide basis.

In another portion of his motion, Mr. Moore appears to
complain that Abbott has not produced every document in its
possession which relates in some way to him, but has limited its
production to documents relating either to Abbott's failure to
hire him for the priority consideration program or his claim that
he has been retaliated against after he was re-hired.  For
example, he contends that he is entitled to "all the emails of
the individuals involved in the hiring process including HR
personnel, hiring managers, their supervisors and managers"
without, apparently, any limitation as to the content of those
emails other than the fact that they might mention his name in

some way.  He asserts that Abbott's choice to produce emails of only his immediate supervisor, that person's supervisor, and a human resource person, and to limit that production to emails which relate in some way to his failure to hire or retaliation claims, was unreasonable, and he argues that he is entitled not only to emails from these and other persons but all other documents such as computer data, notes, and agendas which relate in some way to his employment or re-employment.

Usually, an issue arises in a single-plaintiff employment discrimination case concerning the appropriate temporal or geographic scope of discovery requests.  The Court has already dealt with that issue in this case, and concluded generally that because this case involves a limited number and type of positions for which Mr. Moore was not hired, as well as a short period of time during which he contended he was retaliated against - during which time he held a single position in a specific geographic location - the scope of relevant discovery was similarly limited in time and geography as well as to a specific group of individuals who directly participated in the hiring decisions or in his supervision and training.  The instant motion to compel presents a somewhat different issue, however, although the two are related.

As the Court sees it, the organizing concept behind Mr. Moore's document requests and the arguments presented in the motion to compel appears to be that the way in which Abbott operated its priority consideration program and the way in which it went about training (or not training) Mr. Moore resulted from a "corporate culture."  The contours of that culture, which, of course, span the entire corporation, can only be learned by re-creating a complete history of Abbott's organizational practices, human resource documents, and the conduct of and compensation paid to a myriad of corporate decision-makers, trainers, and supervisors.  These individuals, in turn, can be identified only by having Abbott turn over every piece of paper containing Mr.

Moore's name, whether that piece of paper bears any reasonable relationship to the limited claims he has advanced in this case or not. Of course, if such a theory were accepted, the proper scope of discovery in a case such as this would be limited only by the size of the corporate defendant and the length of time which it has been in business, as well as the volume of documentation it maintains on its individual employees. Whatever else can be said about the scope of permissible discovery under the Federal Rules of Civil Procedure, it is certainly not that broad. Further, as Abbott correctly points out, the Court must be conscious of the cost-benefit relationship between the scope of discovery requested and the amount involved in the case, a consideration which becomes even more significant when the discovery requests involved go well beyond the central issues in the case and seek information which, if relevant at all, bears only upon peripheral matters.

Mr. Moore is not the first litigant to make discovery requests which are overbroad and to insist that the defendant produce a mountain of documents based upon the assertion that certain categories of those documents may contain relevant information. However, as the court in MacIntosh v. Building Owners and Managers Ass'n, 231 F.R.D. 106, 108-09 (D.D.C. 2005) observed, a party is not entitled to an unlimited number of documents simply "because of the possibility that there is something in [them] that may prove his case." In other words, mere speculation about relevance will not do. In order to grant a motion to compel such as this one, the Court must be persuaded that there is a reasonable probability that the requested documents are either themselves admissible or will likely lead to the discovery of relevant evidence. The broader the request, and the more general the arguments advanced in support of it, the less likely it is that the Court can reach this conclusion. That describes the situation presented by the motion to compel.

The Court's expectation, and its usual experience, is that

when a party begins discovery by making requests that, by any
reasonable measure, are much too inclusive, the parties then
engage in a negotiation process which produces two results.
First, the opposing party identifies a smaller group of documents
that it will produce voluntarily.  Sometimes, that resolves the
dispute.  Often, however, the requesting party believes that the
opposing party has interpreted its obligation to produce
documents too narrowly, so it offers to refine its requests in
order to reduce the gap between the parties, thereby creating a
fairly definable dispute in the event that negotiations over
discovery ultimately prove unsuccessful.  It is rare that the
requesting party simply accepts whatever it is that the opposing
party agrees to give it, and then continues to insist that it be
provided with the full complement of documents it originally
requested on the grounds that all of those documents are
discoverable.

     From a review of Mr. Moore's motion to compel and his reply
memorandum, that is substantially what has happened here.  His
failure to articulate any compromise position leads to the
following situation.  To grant a motion to compel which is
presented and argued in the way that Mr. Moore has presented and
argued his motion, the Court must essentially rule that the scope
of his original requests was reasonable.  If it does not reach
that conclusion, there are no arguments before the Court which
would support a finding that any particular lesser amount of
discovery - but something more than the discovery that the
defendant has produced - is the amount that the plaintiff is
entitled to.  In some cases, the difference between the parties'
positions is sufficiently narrow, and the possible compromise
positions sufficiently clear, that the Court is able to discern
and to define how much additional discovery is appropriate.  In a
case like this, however, that is simply not possible. Absent
some argument by Mr. Moore that there is a definable and
reasonable amount of additional documents and information that he

is entitled to, and which is something other than everything he
initially asked for, the Court is left with two clear
alternatives: either to hold that his original requests are
reasonable, and to direct Abbott to respond in full to those
requests, or to hold that the original requests are grossly
overbroad, and to deny Mr. Moore any relief at all.  It should be
apparent from the above discussion that the Court believes his
requests ask for a very large amount of information that is
either totally irrelevant or so marginally relevant that the
resources needed to retrieve that information ought not to be
expended.  This conclusion leads the Court to deny Mr. Moore's
motion in its entirety except for those matters, discussed below,
about which the Court has been given enough information to
conclude that Mr. Moore has not yet been given discovery to which
he is reasonably entitled.

For all of these reasons, the Court will generally deny the
motion.  The Court does note that, as a result of the hearing
held on the motion, Abbott has produced additional material
beyond that described in the motion to compel, and based on the
current record the Court is satisfied that Abbott has produced
the vast majority of documents in its possession which address
both the central issues in this case and many of the peripheral
ones.  However, there are some particulars provided in the motion
in reply which deserve additional comment and which may well lead
to the production of additional information.

IV.

On page 6 of the reply memorandum, Mr. Moore asserts that
Abbott did not provide him with his complete personnel file
including his compensation information.  If this is true, that
information should be provided.  On page 18 of that same
memorandum, Mr. Moore asserts that Abbott did not provide age
data for the positions for which he applied.  He also asserts
that age information which was provided has not been broken down
by year or by position.  Obviously, that breakdown is important

in order to permit Mr. Moore to understand and to argue the significance of such information. On page 19 of the reply memorandum, Mr. Moore notes that emails were produced or provided to him only in hard copy format. As amended, Federal Rule of Civil Procedure 34 states a preference for the production of electronically stored information in its native format. The failure to do so here, according to Mr. Moore, presents additional problems because the hard copies do not allow him to see the names of all individuals who received the emails or other underlying data. Frankly, this is an issue which the Court would have expected the parties to resolve early on in the litigation, but now that it has arisen, Abbott should determine the feasibility of producing this information in electronic form and should do so absent unusual circumstances preventing that production. Apart from these specifics, however, there is nothing else in the motion which persuades the Court that Abbott has not complied with its legitimate discovery obligations here. Thus, with these exceptions, the motion will be denied in its entirety.

V.

For the reasons set forth above, Mr. Moore's motion to compel discovery (#77) is denied with the exception of those matters set out in section IV of this Opinion and Order. The parties shall confer about those matters and reach either a resolution or an impasse within fifteen days. If it is the latter, they shall contact the Court for an informal conference.

VI.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting

party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge