UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William J. Moore,

      Plaintiff,

-v-                                                              Case No. 2:05–cv–1065

Abbott Laboratories, *et al.*,                                   Judge Michael H. Watson

      Defendants.

## OPINION AND ORDER

Plaintiff asserts Defendants discriminated against him because of his age by failing to rehire him for several positions after he was terminated as part of a reduction in force, and that Defendants retaliated against him after he was rehired because he continued to pursue his age discrimination claims, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Revised Code Chapter 4112. Defendants move for summary judgment. Defs.' Mot. Summ. J., ECF No. 116. For the reasons that follow, the Court grants Defendants' summary judgment motion in part and denies it in part.

## I. BACKGROUND

Plaintiff William J. Moore was born in March 1948. Moore earned his Masters of Science Degree in nutrition from Florida International University in 1978. Moore is a Registered Dietitian.

Defendants are Abbott Laboratories, Abbott Laboratories, Inc., and Abbott Laboratories Ross Products Division. The Court will refer to these related entities collectively as "Abbott."

Abbott hired Moore as a medical nutritional sales representative for the Brooklyn, New York territory in November 1982.  Moore was promoted several times and received numerous awards for his performance while working at Abbott.  In 2000, Moore became a physician's specialist, a position he held until February 2005, at which time Abbott eliminated all physician's specialists as part of a reduction in force.

Soon after his termination, Moore began applying for other positions at Abbott. Abbot declined to hire Moore for twelve of the positions for which he applied.[1]  The circumstances of Abbott's rejection of Moore for each of the twelve positions will be discussed below in more detail.  In October 2005, Moore filed an action against Abbott in the Franklin County, Ohio, Court of Common Pleas, asserting age discrimination under Ohio Revised Code Chapter 4112 on the basis of Abbot's failure to rehire him. Abbott removed the action to this Court in November 2005.

Abbott rehired Moore as a sales trainer in March 2006.  Moore avers that soon after he was rehired he began to experience harassment and retaliation for his age discrimination lawsuit and other protected activities.[2]  The Court will examine each

---

[1]Moore applied for: (1) Key Account Executive (Req. No. 29811); (2) Professional Pharmaceutical Representative I (Req. No. 29433); (3) Professional Pharmaceutical Representative I (Req. No. 29144); (4) Professional Pharmaceutical Representative (Req. No. 29226); (5) Professional Pharmaceutical Representative (Req. No. 29090); (6) Senior Sales Trainer–Medical Nutritional Sales I (Req. No. 31917); (7) SalesTrainer–Pediatrics (Req. No. 31602); (8) Sales Trainer–Consumer Product Sales (Req. No. 32687); (9) Director of Professional Services (Req. No. 25252); (10) Retail Sales Specialist, Abbott Diabetes Care Division (Req. No. 32397); (11) Sales Trainer–Medical Nutritionals (Req. No. 29804); and (12) Director of Professional Services (Req. No. 31634).

[2]Moore asserts twelve categories of alleged retaliation concerning: (1) the location and size of his office and his exclusion from meetings; (2) a manager's failure to shake Moore's hand and a co-worker's failure to introduce him to a new employee; (3) an organizational chart that listed Moore at the bottom; (4) a demand that Moore stop talking about his lawsuit to other employees; (5) a co-worker's negative comment about Moore's past work performance; (6) assignment of Moore to make introductory comments at trainee graduations without first being provided written biographical information; (7) a tight deadline for an assignment; (8) alleged harassment in connection with the preparation for the Phoenix Regional Meeting; (9) unfair criticism after the Phoenix Regional Meeting; (10) disparate treatment in the assignment of

instance of alleged retaliation and harassment below.  Moore added a claim of

retaliatory harassment in his amended complaint filed in October 2007.  Pl.'s Am.

Compl.  ¶¶ 22, 23, ECF No. 56.

Moore resigned from his position at Abbott in March 2008.  He added an

allegation of constructive discharge on the basis of the alleged harassment to his

February 2009 amended complaint.  Pl.'s Am. Compl. ¶ 18, ECF No. 105.

## II.  SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Federal Rule of Civil

Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as
> a matter of law.

Fed. R. Civ. P. 56(c).

The Court may grant summary judgment if the opposing party fails to make a

showing sufficient to establish the existence of an element essential to that party's case

and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't. of Nashville-Davidson Cnty.*,

538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, who must set forth specific facts

---

products; (11) unfair criticism with respect to Moore's 2006 performance review; and (12) unfair criticism
with respect to Moore's 2007 performance review.

showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III. AGE DISCRIMINATION

### A. STANDARD OF REVIEW

The Age Discrimination in Employment Act ("ADEA") provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects individuals forty years of age or older. 29 U.S.C. § 631(a).

A plaintiff may prove an ADEA claim by direct evidence of discrimination or through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248,

256–59 (1981). *Harris v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 594

F.3d 476, 485 (6th Cir. 2010). To establish a prima facie case of age discrimination

under the *McDonnell Douglas/Burdine* framework, a plaintiff must establish: (1) he was

at least forty years old when the alleged discrimination occurred; (2) he applied for and

was qualified for a position for which the employer was seeking applicants; (3) despite

his qualifications he was rejected; and (4) the employer selected a substantially

younger person for the position. *See id.* If the plaintiff demonstrates a prima facie

case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory

reason for its decision. *Id.* Once the defendant articulates a legitimate

nondiscriminatory reason for its action, the burden shifts back to the plaintiff to establish

that the defendant's "proffered reason was a mere pretext for intentional age

discrimination." *Id.* Throughout the case, the plaintiff bears the ultimate burden of

proving that age was the "but for" reason for the adverse employment action. *Id.* (citing

*Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009); *Ky. Ret. Sys. v. EEOC*,

128 S. Ct. 2361, 2366 (2008)).

A plaintiff may demonstrate pretext by showing that the defendant's proffered

reason (1) lacked any basis in fact, (2) did not actually motivate the defendant's

decision, or (3) was an insufficient basis to motivate the adverse employment action.

*Id.* "A defendant's proffered reason cannot be proved to be pretext 'unless it is shown

*both* that the reason was false, *and* that discrimination . . . was the real reason.'" *Id.*

(quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in

original).

The above standards also apply to age discrimination claims brought under Ohio Revised Code Chapter 4112.  *See Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, 179 (2004).

## B.  FAILURE TO HIRE CLAIMS

Abbott argues it is entitled to summary judgment with respect to all twelve of Moore's failure to hire age discrimination claims.  With the exception of one position that Abbott cancelled, Abbott hired candidates who were substantially younger than Moore for every position discussed below.  Moore asserts that he was qualified for all of the positions, and that in each instance genuine issues of material fact preclude summary judgment for Abbott.

### 1.  Positions filled before Moore applied

Abbott argues that it is entitled to summary judgment in its favor with respect to four of the positions for which Moore applied because the decisions to hire another candidate were made before Moore submitted his applications for the jobs.[3]  Moore maintains that he can demonstrate both a prima facie case and pretext for all four positions.

The essential facts are uncontroverted.  With respect to Requisition No. 29811, hiring manager Kenneth Thornton offered the position to Robert Davidson on May 13, 2005.  Thornton Dep. 96, ECF No. 136–25.  On May 20, 2005, Abbott opened Requisition No. 29811.  Moore applied for the job three days later.

---

[3]The four positions are: (1) Key Account Executive (Req. No. 29811); (2) Professional Pharmaceutical Representative I (Req. No. 29433); (3) Professional Pharmaceutical Representative I (Req. No. 29144); and (4) Professional Pharmaceutical Representative (Req. No. 29226).

Hiring manager Dave Houston verbally offered the position designated as Requisition No. 29433 to internal candidate Wendy Wilson on March 9, 2005. Defs.' Mot. Summ. J. App. Tab 11, ECF No. 116. Wilson accepted the offer the same day. *Id*. Houston followed up with an offer letter on March 10, 2005. *Id*. Tab 12. Wilson began working in the position on March 14, 2005. Abbott opened Requisition No. 29433 on March 15, 2005. Moore applied for the position the next day.

With regard to Requisition No. 29144, hiring manager Houston orally offered the job to Jennifer Miller in late February 2005. Houston Dep. 92, ECF No. 136–5. Abbott posted the Requisition on February 28, 2005. Moore applied for the position on March 2, 2005, and the Requisition remained open until March 29, 2005.

Hiring Manager Brian Mahon interviewed Andrew Dill for the position eventually designated as Requisition No. 29226 in the fall of 2004. Mahon Dep. 30, ECF No. 136–6. Mahon was impressed with Dill. *Id.* After the interview, however, Mahon was informed he could not fill the position at that time. *Id.* at 33. Mahon told Dill to stay in touch in the event the position became available again. *Id.*

In February 2005, Mahon's regional manager authorized Mahon to fill the position. Mahon determined he would hire Dill for the job. Mahon interviewed Dill again, and offered him the position in late February or early March 2005. *Id.* at 43. Mahon sent Dill a written offer on March 8, 2005. Dill signed the letter indicating his acceptance on March 9, 2005.

Mahon received Moore's resume by email on March 1, 2005. Mahon testified that he believed he received Moore's resume after he offered the position to Dill. Mahon Dep. 46, ECF No. 136–6. Abbott opened Requisition 29226 on March 2, 2005.

On March 4, 2005, Moore applied for the job.  The Requisition remained open until March 16, 2005.

Abbott asserts that Moore cannot establish a prima facie case of age discrimination for those positions because Abbott was no longer seeking applicants for them when Moore applied.  *See McDonnell Douglas*, 411 U.S. at 802 (a plaintiff must show that he applied for a position "for which the employer was seeking applicants"); *see also Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (a plaintiff must demonstrate that his rejection did not result from the absence of a vacancy in the job sought); *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006) (same).  Further, Abbott avers that even if Moore could establish a prima facie case, he cannot overcome Abbott's legitimate, nondiscriminatory reason for not hiring him for the four positions, namely, that it had already made its hiring decisions before Moore applied for the positions.

Moore raises a myriad of arguments in response, most of which are inapposite. For example, Moore argues that he was substantially better qualified for the positions than the younger candidates Abbott selected.  Abbott, however, does not seek summary judgment on the basis that Moore was not qualified for the positions.  Indeed, Abbott does not assert that Moore cannot meet the other elements of his prima facie case with respect to the four jobs.  Rather, Abbott seeks summary judgment on the narrow ground that it was not seeking applicants when Moore applied for the positions, or, in the alternative, that Moore cannot demonstrate pretext.  With regard to the latter, Moore offers evidence of errors in Abbott's records, such as the mistaken identification of the individual hired as an elimination candidate, or a notation erroneously indicating

that Moore was contacted and interviewed for the position. The errors in Abbott's records are irrelevant to the pretext analysis as they do not cast doubt on Abbott's assertion that it did not select Moore for the positions because it made its hiring decisions before Moore applied. Hence, the errors do not show pretext.

Nevertheless, more germane to Abbott's argument, Moore notes that he applied for the positions soon after the requisitions were opened and well before they were closed. He contends that because the requisitions were open, he has demonstrated that Abbott was seeking applicants when he applied.

Abbott replies that "if the Court posted a clerkship opening on its website, interviewed candidates, and made an offer which the Court expected to be accepted, would it still be 'seeking applicants' merely because the website still reflected an opening? Of course not." Defs.' Reply 4, ECF No. 147. Abbott's example differs from the instant case in one important respect: the order of events in the quoted example does not correspond to the facts of the case at bar. In Abbott's example, the Court posted the position, then made its hiring decision. Here, in contrast, Abbott made the hiring decision, then opened the requisitions. So the question remains, why would Abbott engage in the futile act of posting a job after it made its hiring decision?

The Court finds that in this case futility does not equate to pretext. Abbott explains that during the relevant period, hiring managers had discretion as to whether to post jobs or not, and Abbott had no policy against offering a job to a candidate before posting a position. Defs.' Reply App. Tab 93 Smith Decl. ¶ 3, ECF No. 147–3. The Court detects nothing inherently nefarious or pretextual about the practice of hiring before posting, and Moore has not offered any relevant evidence to the contrary.

Abbott's hiring managers moved quickly to fill the four positions without waiting for the requisition to be posted.  The hiring decisions here were made before Moore applied, and therefore before the hiring managers were aware of Moore's age or his interest in the particular positions.  Consequently, the hiring decisions cannot logically reflect an intent to reject Moore because of his age.  On this basis, the Court concludes as a matter of law that Moore has not demonstrated that Abbott's stated reason for not selecting him for the four positions—that the hiring decisions had already been made before be applied—was a mere pretext for age discrimination.  It is therefore unnecessary to reach whether Abbott was still seeking applicants for the positions when Moore applied.  The Court grants summary judgment in Abbott's favor with respect to Moore's claims arising from Abbott's failure to hire him for Requisition Nos. 29811, 29433, 29144, or 29226 because Moore is unable to establish pretext.

### 2. Cancelled Positions

Abbott asserts that it cancelled two of the positions for which Moore applied.  It argues that Moore therefore cannot establish the fourth element of his prima facie case for the two positions, namely, that Abbott selected substantially younger applicants for the positions.  Cancellation of a position may preclude a claim of discriminatory failure to hire.  Cancellation may, for example, serve as a legitimate, nondiscriminatory reason for not selecting the plaintiff.  *Pierce v. Mansfield*, 530 F. Supp. 2d 146, 157 (D.D.C. 2008).  It may also prevent the plaintiff from establishing a prima facie case.  *Porter v. Nicholson*, No. 5–262–SS, 2007 WL 1063309, at *5 (E.D. La. Apr. 3, 2007).  Cancellation does not bar a discrimination claim, however, if the plaintiff can establish that the defendant cancelled the position specifically to unlawfully discriminate against

the plaintiff. *Storey v. City of Sparta Police Dept.*, 667 F. Supp. 1164, 1169–70 (M.D. Tenn. 1987).

### a. Professional Pharmaceutical Representative (Req. No. 29090)

Abbott opened Requisition No. 29090 on February 24, 2005. The position was located in Mansfield, Ohio. In April 2005, Abbott's Field Analytics Department generated a report that concluded the Mansfield position was a low priority. Smith Dep. 61, ECF No. 136–23.

Moore applied for the position in June 2005. In late June 2005, Abbott rejected Moore as well as all of the other applicants. Abbott cancelled Requisition No. 29090 on July 11, 2005. Abbott maintains it never filled the position.

Moore contends that Abbott filled the position when hiring manager selected Randall Dahlke to work in Mansfield. Mahon Dep. 13, 50, ECF No. 136–6. Moore argues that he has therefore satisfied the fourth element of a prima facie case with respect to Requisition No. 29090. As Abbott notes, however, Abbott selected Dahlke under a different Requisition in January 2005, before Abbott eliminated all physician's specialists, including Moore, as part of a reduction in force, and long before Moore applied for Requisition No. 29090 in June 2005.

Moore fails to establish pretext. The uncontroverted evidence shows that Abbott cancelled Requisition No. 29090 and rejected all who applied for the job. Moreover, nothing in the record suggests that Abbott cancelled the position to avoid hiring Moore. The Court finds that Moore failed to cast any doubt on Abbott's legitimate nondiscriminatory reason for not hiring him for the position. Accordingly, the Court grants summary judgment to Abbott with respect to Moore's claim that Abbott failed to

hire him for Requisition No. 29090 because of his age.

### b. Senior Sales Trainer—Medical Nutritional Sales (Requisition No. 31917)

Abbott posted Requisition No. 31917 on August 14, 2005.  Moore applied for the position on August 18, 2005.  Abbott avers that it never interviewed any candidates for the position, and the position was cancelled because it was filled by way of "internal reorganization."  Abbott's witness, Stacie Ward, testified that the position was filled when two internal candidates "swapped" positions.  Ward Dep. 30–31, ECF No. 136–26.  Abbott does not indicate whether the purported reorganization occurred before or after Moore applied.  Abbott cancelled the position on November 15, 2005.

Moore asserts that Abbott selected substantially younger Dale Novy for the position, referring to Abbott's internal organizational charts.  Pl.'s Mem. Opp'n App. Tab 75, ECF No. 146–76.  The charts indicate that Novy, who had been a senior sales trainer in pediatric sales, replaced Keith Hine when Hine left the position of senior sales trainer for medical nutritional sales.  The charts do not show that Novy and Hine "swapped" positions, but do confirm that an internal candidate, Novy, filled the position.

Abbott argues that Moore cannot show that Abbott selected a substantially younger person for the position because Abbott filled the position internally.  Abbott suggests it did not "hire" Novy for the position because he obtained the position through a "transfer."  Abbott cites no authority for the proposition that allowing an existing employee to transfer to an open position is legally distinguishable from selecting or hiring that employee for the position for purposes of the *McDonnell Douglas* analysis.

The fourth prong of the prima facie case requires the plaintiff to show that the employer selected a substantially younger person for the position. *Harris*, 594 F.3d at 485. Abbott selected Novy for the position when it allowed him to transfer to it. The transfer of a single existing employee to an open position is hardly a "reorganization." Novy's status as an internal candidate does not automatically exempt his selection from scrutiny under the ADEA. If this were not so, employers would be free to discriminate on the basis of age so long as they hired internally and characterized the selection as a transfer.

Abbott moves for summary judgment concerning Requisition No. 31917 on the narrow ground that Moore cannot satisfy the fourth element of his prima facie case. At the very least, the Court finds that a genuine issue of material fact exists as to the fourth prima facie element. Accordingly, the Court denies Abbott's summary judgment motion with respect to Requisition No. 31917.

### 3. Position Filled After Moore was Rehired: Sales Trainer–Pediatrics (Req. No. 31602)

Abbott asserts that it is entitled to summary judgment with respect to Requisition No. 31602, sales trainer, because it did not fill the position until after it rehired Moore for a different position of identical grade, responsibility, and title. Abbott posted the position on July 27, 2005. Moore applied for the position the next day. Abbott selected Moore for a different sales trainer position on February 27, 2006, and Moore began working in that position on March 13, 2006. On April 20, 2006, Abbott offered Requisition No. 31602 to a different candidate. Defs.' Mot. Summ. J. App. Tab. 38, ECF No. 116–39. Abbott argues that in those circumstances, Moore cannot satisfy the

third element of his prima facie case.

Moore contends that Abbott filled Requisition No. 31602 before it hired him for the other sales trainer position.  Referring to Abbott's responses to interrogatories, Moore maintains that Abbott hired the substantially younger Kelly McGrath for the position before it hired Moore for the other sales trainer position. Pl.'s Mem. Opp'n App. Tab 80, ECF No. 146–81.  Abbott explains that its prior counsel mistakenly identified McGrath as the person who filled the position in Abbott's interrogatory response.  Abbott asserts that it hired McGrath for a different sales trainer position for which Moore did not apply.  Defs.' Reply App. Tab 104, ECF No. 147–14.  Abbott supplemented and corrected its interrogatory response to indicate that it selected Lori Culver for Requisition No. 31602.

The Court rejects Moore's attempt to seize upon the erroneous interrogatory response to manufacture a claim.  Given Abbott's correction of its interrogatory response, which Moore was free to further explore in discovery, and the other uncontroverted evidence in the record, the Court finds that Moore has failed to raise a genuine issue of material fact as to whether Abbott filled the position after it rehired Moore.  Abbott is therefore entitled to summary judgment in its favor with respect to Requisition No. 31602.

### 4. Failure to List Relevant Qualifications

Abbott next argues that Moore failed to list relevant qualifications for Requisition Nos. 32687 and 25252, and as a result was legitimately screened out of consideration for the positions.  Abbott asserts that Moore cannot demonstrate that he was qualified for the jobs.  It also contends that Moore cannot establish pretext for either position.

### a. Sales Trainer–Consumer Product Sales (Req. No. 32687)

The posted job description for Requisition No. 32687 stated that the position required "two to five years sales and training experience in healthcare industry." Defs.' Mot. Summ. J. App. Tab 41, ECF No. 116–42. The hiring manager for the position, Elsa Zimmerer, testified at her deposition that the foregoing description was inaccurate, and that when human resources sent her the description with that language, she responded that the language would need to be changed to reflect that the position required experience in consumer products sales. Zimmerer Dep. 49–50, ECF No. 136–37. It is unclear whether human resources ever made the change. Nevertheless, Zimmerer's testimony that she was seeking candidates with experience in consumer products sales remains uncontroverted. Zimmerer instructed the recruiter to screen resumes that did not include consumer products sales experience. *Id.* at 43. Moore's resume did not indicate any consumer sales experience, and as a result, it was screened out. Abbott hired Traci Wertz for the position. Wertz had seven or eight years of consumer product sales background.

Moore argues that he does, in fact, have "retail experience in presenting and assisting with marketing to chains such as Kroger and their pharmacy." Pl.'s Mem. Opp'n 16, ECF No. 146. Moore does not, however, dispute that he failed to include that experience in his resume.

Moore also suggests that Abbott's failure to list the requirement of consumer products sales experience in the posted job description is evidence of pretext. As Abbott points out, however, the job descriptions state minimum requirements, and hiring managers are free to have their own, more stringent requirements. The job title for

Requisition No. 32687 is "Sales Trainer–*Consumer Products Sales*" (emphasis added). It is therefore hardly surprising that Zimmerer looked for consumer product sales experience in filling the position. Indeed, Moore could readily have deduced from the job title alone that he should include any such experience in his resume when applying for the job. The Court detects no pretext.

Moore has failed to demonstrate a genuine issue of material fact as to whether Abbott failed to hire him for Requisition No. 32687 because his resume did not indicate he had consumer products sales experience. The Court finds as a matter of law that Abbott has articulated a legitimate, nondiscriminatory reason for not hiring Moore for the position, and that Moore has failed to offer evidence demonstrating pretext. Consequently, Abbott is entitled to summary judgment in its favor with respect to Requisition No. 32687.

### b. Director of Professional Services (Req. No. 25252)

Abbott argues that summary judgment is appropriate for Requisition No. 25252 because Moore failed to list the minimum qualifications for the position in the resume he submitted in applying for the job. The position required ten years of practice and management experience in health care, as well as demonstrated leadership skills at the national level with nutrition, medical, and health care organizations. The job description also required a bachelors degree in nutrition, health policy, health care administration, or related field, with a preference for an advanced degree.

Abbott selected Maureen Doyle-Scharff for the position. She had seventeen years of management experience, including several years in management at Upjohn and Johnson & Johnson at the national level. Although Doyle-Scharff earned a BFA in

graphic arts, her undergraduate course work included marketing, biology, chemistry, genetics, physiology, physics, and biochemistry. She also received leadership education at Wharton. Doyle-Scharff began pursuing an MBA in Pharmaceutical Marketing some time in 2004, although it is not clear whether she started her course work before she applied at Abbott.

Abbott asserts that a recruiter screened out Moore's resume because it did not indicate the requisite ten years of management experience. The only management experience listed on Moore's resume was "Manager, Organizational Services, 1990 to 1993." Pl.'s Mem. Opp'n App. Tab 48, ECF No. 116–49. At his deposition, Moore indicated that he spent only about two years in a position higher than sales representative the entire time he worked for Abbott, and that he had "absolutely no interest in management." Moore Dep. 229–30, ECF No. 136–11.

Moore opines that his Masters Degree in nutrition renders him better qualified than Doyle-Scharff. Given the scant management experience Moore listed in his resume, and that the management experience listed apparently occurred more than a decade before he applied, Moore did not appear to meet the minimum qualifications for the position. His subjective opinion that his Masters Degree in nutrition trumps Doyle-Scharff's seventeen years of management experience does not create a genuine issue of material fact. *See Briggs v. Potter*, 463 F.3d 507, 516–17 (6th Cir. 2006) (plaintiff's subjective view that he was better qualified than other candidates insufficient to establish age discrimination). Moore has not established that he submitted information to Abbott showing that he was qualified for Requisition No. 25252, nor can he demonstrate that Abbott's reason for screening out his resume—because it did not

indicate ten years of management experience—was a pretext for age discrimination. Accordingly, the Court grants summary judgment in favor of Abbott in this instance.

### 5. Retail Sales Specialist, Abbott Diabetes Care Division (Req. No. 32387)

Abbott next asserts that Moore was not minimally qualified for Requisition No. 32387 because he lacked retail sales experience in diabetes products. The posted requirements for the position included: "3–5 years of sales experience, with 1–3 years of progressive experience within the retail channel." Defs.' Mot. Summ. J. App. Tab 49, ECF No. 116–50.

The hiring manager, Daniel Churovia, explained that Moore was not interviewed for the position because his resume did not reflect any retail experience or experience with diabetes products. Churovia Dep. 54–55, ECF No. 136–1. Churovia also noted that Moore's cover letter indicated an interest in pharmaceutical sales, and Requisition No. 32387 was not a pharmaceutical sales position. *Id.* Abbott hired Michael Purdy for the position. Purdy had four years of retail sales experience in diabetes products.

Moore argues that Abbott's failure to interview him constituted disparate treatment. He refers to an email communication from Churovia to the recruiter, Micheline Esposito, in which Churovia stated in part: "Internal Candidates I would like screened Mike Purdy—(Is a PMR and has done a lot of Retail work in the last year with ACC) William Moore—(RSS position in a retail distributorship arm for at least 15 PMR's that need support and guidance to grow market share, see if he can adapt)". Moore avers that Esposito never contacted him to arrange an interview. Moore argues that if Churovia and Esposito had interviewed him, they would have discovered that Moore is an insulin-dependent diabetic with substantial knowledge of diabetic products. In

addition, Moore contends that Abbott's failure to follow its own procedures and its decision to interview several younger candidates for the position who did not meet the minimum qualifications demonstrates age discrimination.

It is undisputed that Moore lacked the requisite retail sales experience with diabetes products.  Moore's contention that his experience as a diabetic person would substitute for retail sales experience with diabetes products is both subjective and speculative.  Likewise, Moore's argument concerning Esposito's failure to contact and interview him is unavailing.  Assuming that Churovia's email was a directive to Esposito to contact and interview Moore—and it is not clear that it was—there is no basis in the record to infer that Esposito's failure to contact Moore was age-related.  Furthermore, Abbott's decision to interview younger candidates who did not meet the posted requirements is likewise of no consequence because Abbott did not hire any of them.  Rather, Abbott selected a candidate who had the required experience that Moore lacked.  It is dispositive that Moore cannot satisfy the prima facie element that he was minimally qualified for the position.  The Court therefore grants summary judgment in favor of Abbott as to Requisition No. 32387.

### 6. Pretext

For two of the positions for which Moore applied, Abbott argues it is entitled to summary judgment because Moore cannot establish that Abbott's legitimate non-discriminatory reasons for not hiring him for the positions were a pretext for age discrimination.

### a.   Sales Trainer–Medical Nutritionals (Req. No. 29804)

Abbott posted Requisition No. 29804 on April 1, 2005.  The posting stated in part

as follows: "Job requires broad scientific understanding of all Ross adult nutritional products and how they are sold. Knowledge of applicable regulatory standards and requirements for infant formula and nutritionals. Requires 2–5 years sales and training experience in the healthcare industry." Pl.'s Mem. Opp'n App. Tab 99, ECF 166–100. Abbott does not argue that Moore was not minimally qualified for Requisition No. 29804. Rather, it contends it had a legitimate, nondiscriminatory reason for not selecting Moore for the job.

Moore applied for the position and hiring manager Keith Hine interviewed him. Hine observed that Moore was "a very nice person, [and] easy to talk to." Hine Dep. 48–49, ECF No. 136–3. Nevertheless, Hine decided not to hire Moore for the position, and instead hired Beverly Clark, who was substantially younger than Moore.

Hine's primary reason for declining to hire Moore was that, unlike Clark, Moore had not been a full-product line sales representative for the past five years, so his experience was not recent. *Id.* Hine deemed the recent experience significant because the job entailed training new hires. *Id.* at 49.

Moore again argues that he was better qualified than the selected candidate. As noted above, however, his subjective belief that he was better qualified does not demonstrate discrimination. *See Briggs*, 463 F.3d at 516–17. Not one of Moore's arguments casts doubt on Abbott's stated reason for not hiring him for the position. It hardly seems pretextual that an employer would prefer a candidate whose experience in the relevant area was more recent. Moore has failed to demonstrate pretext as a matter of law, and Abbott is therefore entitled to summary judgment with respect to Requisition No. 29804.

### b. Director of Professional Services (Req. No. 31634)

Requisition No. 31634 is the same Director of Professional Services position as Requisition No. 25252 discussed above, which Abbott filled by hiring Maureen Doyle-Scharff.  Abbott promoted Doyle-Scharff, and then reopened the position under the new requisition.  As before, the position required, *inter alia*, ten years of practice and management experience in health care, as well as demonstrated leadership skills at the national level with nutrition, medical, and health care organizations.  Moore applied for Requisition No. 31634, listing additional qualifications in his resume that he had not included when he applied for Requisition No. 25252.

Hiring manager Doyle-Scharff selected Mark Pilkington for the position. Pilkington had a masters degree in pharmacy administration from the University of Illinois.  He worked as a director or manager in pharmaceutical-related businesses for about nineteen years.  Doyle-Scharff and Pilkington had been colleagues at Pharmacia and Upjohn, and therefore Doyle-Scharff knew the kind of work Pilkington had done. Doyle-Scharff explained, "[h]e was involved in and worked in the pharmaceutical industry in the alliance development and professional affairs arena working with specialty societies, patient advocacy organizations and leveraging those relationships on behalf of policy, regulatory and other issues that were important to his employers." Doyle-Scharff Dep. 51, ECF No. 136–19.  Doyle-Scharff indicated that the position had been completely redefined, and that "I hired someone who had experience in alliance development and advocacy.  That individual has a plethora of relationships in the health care community, which is the point."  *Id.* at 114.

Abbott says it rejected Moore based on his lack of experience.  Moore's cover

letter and resume indicated that when Moore was manager of organizational services at Ross from 1989 to 1993, he worked as a liaison to national healthcare-related organizations.

Moore argues that he was better qualified than Pilkington. As before, Moore's subjective opinion that he was better qualified does not create a genuine issue of material fact. *See Briggs*, 463 F.3d at 516–17. Doyle-Scharff had previously worked with Pilkington, so Pilkington was therefore a known quantity in terms of his background in alliance development, which was the focus of the new position. Pilkington had nineteen years of management experience in pharmaceutical-related organizations and businesses industry. By comparison, Moore's resume referred to only three years of potentially relevant management experience which ended more than a decade before he applied for the position. The contrast in qualifications is so stark that no reasonable juror could find that Abbott's stated reasons for preferring Pilkington over Moore were pretextual. Consequently, Abbott is entitled to summary judgment in its favor with respect to Moore's claim that Abbott's failed to hire him for Requisition No. 31634 because of his age.

In sum, the Court finds that summary judgment lies for all but one of Moore's failure to hire age discrimination claims. Only Moore's claim concerning Requisition No. 31917 survives summary judgment.

## IV. RETALIATION

## A. STANDARD OF REVIEW

The ADEA provides that it shall be unlawful for an employer "to discriminate against any of his employees . . . because such individual . . . has made a charge,

testified, assisted, or participated in any manner in . . . litigation under this chapter." 29

U.S.C. § 623(d). The Sixth Circuit recognizes that retaliation may take the form of

materially adverse employment actions *or* a hostile work environment. *Morris v.*

*Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000); *Allen v. Ohio Dept. of Job*

*and Family Servs.*, 697 F. Supp. 2d 854, 902–03 (S.D. Ohio 2010). To establish a

prima facie case of retaliation, a plaintiff must demonstrate: (1) he engaged in a

protected activity; (2) the defendant was aware of the protected activity; (3) defendant

subjected plaintiff to a materially adverse employment action *or* severe and pervasive

retaliatory harassment by a supervisor; and (4) a causal connection exists between the

protected activity and the materially adverse action or harassment. *Russell v. Univ. of*

*Toledo*, 537 F.3d 596, 609 (6th Cir. 2008).

An employment action is materially adverse if it would deter a reasonable

employee from making or supporting a charge of discrimination. *Burlington N. & Sante*

*Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998); *see Faragher* [*v. City of Boca Raton*], 524 U.S. [775], at 788 [(1998)] (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson* [*v. Shell Oil Co.*], 519 U.S. [337], at 346 [(1997)]. It does so by prohibiting employer

actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 Manual § 8, p. 8–13.

*Id.* at 68–69. Elaborating on the *Burlington* standard, the Sixth Circuit has observed that "*de minimis* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nonretaliatory reason for its action. *Harris*, 594 F.3d at 485. Once the defendant articulates a legitimate nonretaliatory reason for its action, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but was a mere pretext for retaliation. *Id.*

## B. ADVERSE EMPLOYMENT ACTION RETALIATION

Abbott argues, *inter alia*, that the first ten alleged categories of retaliation listed below do not constitute adverse employment actions. The last two instances of alleged retaliation concern Moore's 2006 and 2007 performance evaluations, for which Moore received the relatively low ratings of "partially achieved" for both years. Abbott does not argue the performance reviews were not materially adverse, but contends Moore has failed to establish a causal connection between the performance reviews and any protected activity. Abbott also contends it had legitimate, non-retaliatory reasons for giving Moore the "partially achieved" ratings.

The Court will first examine whether any of the first ten alleged categories of retaliation constitute materially adverse employment actions under the *Burlington* standard. Next, the Court will determine whether Moore has established the element of

causation with respect to the 2006 and 2007 performance evaluations.

### 1. Location and Size of Office and Exclusion from Meetings

Moore asserts that his office was too small and isolated. He maintains Abbott currently uses the office as a paper closet. Moore states other sales trainers had beautiful offices. He indicates he found these circumstances humiliating and embarrassing. In addition, Moore avers he was excluded from numerous meetings with his peers due at least in part to the location of his office, which he says was fifty yards from the other sales trainers' offices. Moore also says he was not invited to a national meeting—although he ultimately attended that meeting—and was excluded from the rehearsal for the national meeting.

Abbott argues that the size and location of Moore's office does not amount to an adverse employment action. Abbott asserts that an employee identified as "Wallop" was the manager of office design and responsible for assigning the office to Moore, and that there is no evidence that Wallop was aware of Moore's lawsuit. Schoenberger Dep. 93–94, Defs.' Mot. Summ. J., App. Tab. 66, ECF No. 116–67. Abbott also cites decisions which indicate that assignment to a smaller office does not constitute an adverse employment action. *See, e.g., Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182–83 (6th Cir. 2004) (reduction of lab space from 2000 square feet to 150 square feet not adverse employment action); *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 747 (W.D. Ky. 2006) (decrease in office size not materially adverse employment action).

The Court finds that the size and location of Moore's office do not amount to unlawful retaliation. First, assignment to a smaller office does not constitute an adverse employment action. *See Mitchell*, 389 F.3d at 182–83. *See also Fercello v. Cnty. of*

*Ramsey*, 612 F.3d 1069, 1078 (8th Cir. 2010) (relocation to smaller office without window not materially adverse employment action). Second, although assignment to an undesirable office location may be deemed materially adverse in some circumstances, the kind of circumstances that would render office location actionable are not present in the instant case. *See Signer v. Tuffey*, 66 F. App'x 232, 235 n.2, 236 (2d Cir. 2003) (stating that it was "conceivable" that reasonable juror could find relocation of police officer's office to underground sub-basement formerly designated as bomb shelter which contained only locker rooms, computer equipment, and changing rooms was an adverse employment action when considered together with other alleged instances of retaliation). Moore avers his office was isolated, yet concedes that his office was located directly next to the office of his supervisor, Gary Schoenberger. Moore Aff. ¶ 85, ECF No. 146–2. In addition, Moore acknowledges he had numerous "hallway" meetings with manager Steve Barclay, further undercutting his allegation that he was isolated. *Id.* ¶ 138. Moreover, at a pace of three miles per hour, it would have taken Moore less than one minute to traverse the alleged fifty yard distance between his office and those of the other sales trainers. In light of these circumstances, the Court rejects Moore's assertion that he suffered a materially adverse employment action because of the location of his office.

The Court also finds that the alleged exclusion of Moore from meetings does not constitute a materially adverse employment action. Moore gives only one concrete example of a meeting from which he was excluded: the rehearsal for the national meeting. It is undisputed, however, that Moore was not slated to make a presentation at the national meeting. Otherwise, Moore vaguely asserts he was not invited to an

unknown number of what were apparently impromptu meetings.  Such evidence does

not demonstrate an adverse employment action on the basis of exclusion from

meetings.  *See Watson v. City of Cleveland*, 202 F. App'x 844, 855 (6th Cir. 2006)

(removal from two investigations, exclusion from some meetings, and denial of raise did

not constitute adverse employment actions); *Nielsen v. Ford Motor Co.*, No. 88-1828,

1989 WL 58398, at *4 (6th Cir. Jun. 5, 1989) (vague assertion of tendency to exclude

plaintiff from meetings and downgrading of evaluations did not demonstrate materially

adverse employment actions).

The Court finds as a matter of law that the size and location of Moore's office,

and his alleged exclusion from some meetings, would not have deterred a reasonable

employee in his position from making or supporting a charge of discrimination.  Notably,

the *Burlington* standard is objective: it measures retaliation from the standpoint of a

*reasonable* employee, not one who is unusually sensitive.  *See* 548 U.S. at 68–69.

Thus, Moore's subjective assertion that he found these and other circumstances at

Abbott humiliating or embarrassing does not give rise to an actionable retaliation claim.

Even viewed in light most favorable to Moore, the evidence concerning the size and

location of Moore's office, and his alleged exclusion from meetings, does not support a

claim of retaliation.  Abbott is therefore entitled to summary judgment on those aspects

of Moore's retaliation claim.

### 2.  Failure to Introduce or Shake Hands

Moore next argues he suffered retaliation when a senior sales trainer, Marcie

Heinrich, failed to introduce Moore to a new sales trainer, and when Monica Hysell,

Vice President of Nutritional Sales, neglected to shake his hand.  As before, Moore

avers the incidents caused embarrassment and humiliation.

These allegations merit little discussion. They fall squarely within the category of petty slights and lack of good manners that rarely constitute adverse employment actions. *See Burlington*, 548 U.S. at 69. No reasonable employee would be deterred from engaging in protected activities as a result of such incidents. For these reasons, the Court grants summary judgment in favor of Abbott on Moore's retaliation claim based on Heinrich's failure to introduce a new sales trainer to him and Hysell's failure to shake his hand.

### 3. Organizational Chart

Moore also asserts Abbott retaliated against him for filing his discrimination lawsuit when it listed him at the bottom of an organizational chart. *See* Pl.'s Mem. Opp'n Tab 113, ECF No. 146–114. Specifically, Moore objects to being listed below two other sales trainers, Beverly Clark and Ryan Surio, although he acknowledges Clark was the most senior sales trainer in his group. He maintains the chart was "a subtle form of humiliation." Pl.'s Mem. Opp'n 34, ECF No. 146.

Here, Abbott's "subtle" employment action was not materially adverse. Rather, as with the failure to shake hands, it likewise fits within the category of petty slights or minor annoyances that do not amount to actionable retaliation. Stated otherwise, being listed at the bottom of such an organizational chart would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. Consequently, Abbott is entitled to summary judgment in its favor with respect to Moore's claim that he suffered unlawful retaliation when Abbott listed him at the bottom of an organizational chart.

### 4. Order to Stop Talking About Lawsuit

Moore further contends that he was subjected to retaliation when on May 1, 2006, Cindy Foster, Abbott's human resources representative, ordered him to stop talking about his lawsuit against Abbott with employees.  Moore denies Foster's allegation that he discussed his lawsuit with other sales trainees.  He characterizes the incident as "humiliating and disturbing."  Pl.'s Mem. Opp'n 34, ECF No. 146.

Abbott again argues that the event does not rise to the level of a materially adverse employment action.  Abbott is correct.  Directing an employee not to discuss his discrimination claims while at work is not a materially adverse employment action. *Jones v. Johanns*, 264 F. App'x 463, 469 (6th Cir. 2007) (three letters directing plaintiff to refrain from discussing charges with other employees, which plaintiff denied doing, did not constitute materially adverse employment actions).

Here, Moore complains of a single incident of being told not to discuss his lawsuit.  As a matter of law, Foster's conduct would not have dissuaded a reasonable employee from making or supporting a discrimination claim.  Hence, directing Moore not to discuss his lawsuit with co-workers did not amount to a materially adverse employment action.  Abbott is therefore entitled to summary judgment on Moore's retaliation claim based upon Foster's direction to Moore to not discuss his lawsuit.

### 5. Co-worker's Negative Comment

Moore next asserts he suffered retaliation when, in the presence of co-worker Beverly Clark, co-worker Deb Foley said Moore's performance as a sales representative was questionable.  In addition, Moore alleges that Foley told him not to

disparage dieticians. Moore characterizes Foley as a "senior co-worker." Pl.'s Mem.

Opp'n 35, ECF No. 146.

Abbott objects to Moore's depiction of Foley as a "senior" co-worker. It contends

that Foley was not Moore's supervisor or manager, and her conduct should therefore be

judged under the standard for co-worker retaliation, which requires a plaintiff to

demonstrate:

> (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade
> a reasonable worker from making or supporting a charge of discrimination,
> (2) supervisors or members of management have actual or constructive
> knowledge of the coworker's retaliatory behavior, and (3) supervisors or
> members of management have condoned, tolerated, or encouraged the acts
> of retaliation, or have responded to the plaintiff's complaints so inadequately
> that the response manifests indifference or unreasonableness under the
> circumstances.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008). Abbott argues

Moore fails the above test because Foley's conduct is not sufficiently severe and he

cannot show that any Abbott supervisor had actual or constructive knowledge of Foley's

behavior.

Moore does not present evidence that any supervisor or manager at Abbott was

aware of Foley's comments to Moore. Moore's claim therefore fails under *Hawkins*.

Nevertheless, even if *Hawkins* did not apply, Foley's comments fall far short of

constituting an adverse employment action. Instead, Foley's remarks fall within the

same category of petty slights and lack of good manners as a failure to shake hands.

Such incidents rarely rise to the level of actionable retaliation, and the instant case is no

exception. *See Burlington*, 548 U.S. at 69. The Court finds as a matter of law that

Foley's comments would not have caused a reasonable employee to refrain from

protected activity. As a result, the Court grants summary judgment in Abbott's favor on Moore's claim that Foley's remarks to him constituted a materially adverse employment action in retaliation for Moore's filing of the present lawsuit against Abbott.

### 6. Assignment to Make Introductory Comments at Trainee Graduations

Moore further asserts he endured retaliation when his supervisor, Natasha Raimondo, assigned him the task of making brief introductory remarks about sales trainees at trainee graduation dinners without first providing him written biographical material about the sales trainees. Moore indicates that managers typically provided written background material about the trainees to the sales trainers when they were asked to make the remarks at trainee dinners. The materials included the trainees' personal accomplishments, family information, and perhaps the names of their pets. Moore contends that "on more than one occasion," however, Raimondo asked him to make remarks about trainees despite the fact that he was not first provided the written background materials. Moore Dep. 182, ECF No. 136–1. He contends that no other sales trainers were asked to make remarks without the written materials. As with the other instances of alleged retaliation, Moore avers the task of making the remarks without first receiving the written background information resulted in humiliation.

Abbott notes that prior to a graduation dinner, Moore would have spent two weeks working with the trainees about whom he was asked to offer comments. Abbott argues that asking Moore to make remarks about people with whom he had worked the previous two weeks, without pre-drafted information, did not amount to an adverse employment action. The Court agrees. Asking an experienced salesperson to ad lib for two minutes does not strike the Court as an onerous request. Surely Moore could

have quickly thought of some positive comments to say about the trainees with whom
he had recently worked: about their energy, enthusiasm, eagerness to learn, sense of
humor, whether he or she learned quickly, asked good questions, was a team player,
dressed for success, recovered well after spilling coffee on the first day, etcetera.
Moreover, Moore does not allege that he was disciplined, reprimanded, or even
criticized about whatever remarks he made without the written materials. A *reasonable*
employee in Moore's position would not allow such situations to deter him from making
or supporting a discrimination claim. It follows that Abbott is entitled to summary
judgment with respect to Moore's retaliation claim concerning the assignment of making
remarks about sales trainees.

### 7. Tight Deadline

Moore also contends that Abbott retaliated against him for filing his
discrimination lawsuit by making him work under tight deadlines. Moore provides only
one concrete example of a tight deadline. Specifically, Moore avers that his supervisor
Natasha Raimondo approached him on a Thursday and told him he had to complete an
extensive project by the following Monday. He says he worked all night and completed
the project. Nonetheless, Moore maintains the project was not used. Furthermore,
Moore alleges that Raimondo did not require the same results from Deb Foley, who
continued to work on a similar project three months later.

Abbott argues that a single tight deadline does not constitute an adverse
employment action. Moreover, Abbott asserts that Moore's vague reference to Foley's
alleged similar project is not supported by any evidence and therefore cannot be used
as a basis for comparison for purposes of establishing disparate treatment. In addition,

Abbott contends that Moore has failed to demonstrate that Raimondo's legitimate, non-discriminatory reason for asking him to complete the project on an expedited basis was a mere pretext for retaliation. With respect to the latter, Raimondo recalls assigning the project to Moore because his workload was lighter. Raimondo Dep. 159, Defs.' Mot. Summ. J., App. Tab. 70, ECF No. 116–71. Raimondo testified that she worked on the project with Moore, and also stayed up "quite late" working on it. *Id.* at 160. She indicated that the tight deadline was the result of a customer request. *Id.* She explained: "There was a sense of urgency, and it's not uncommon that we have to complete things accurately and quickly." *Id.*

Moore does not present evidence to demonstrate that Raimondo's stated reasons for assigning him a project with a tight deadline were prextual. Indeed, it would be incongruous for Raimondo to assign a tight deadline as a form of retaliation but then subject herself to staying up late to work with Moore on the project. Furthermore, having to work late hours on a single rush project would not dissuade a reasonable employee in Moore's position from pursuing a charge of discrimination. The assignment therefore did not constitute a materially adverse employment action. Moreover, without more information, it is impossible to determine whether Foley was treated more favorably in substantially similar circumstances. For these reasons, Abbott is entitled to summary judgment in its favor with respect to Moore's claim that he was subjected to unlawful retaliation in the form of tight deadlines.

### 8. Harassment Regarding Preparation for Phoenix Regional Meeting

Moore next asserts that he experienced retaliation in connection with a presentation he was to give at the Phoenix Regional Meeting. Specifically, while Moore

was giving a presentation at a training class, supervisor Natasha Raimondo interrupted him and corrected him for mispronouncing the word "Glucokinase." Moore admits he incorrectly pronounced the word as "Glucosekinase." He alleges Raimondo lectured him, but treated Deb Foley professionally when Foley mispronounced a word during a different presentation. Additionally, Moore complains that on the eve of the regional meeting, Raimondo sent him an email "stating the importance of the regional meeting, as well as expectations." Moore Aff. ¶ 108, Pl.'s Mem. Opp'n App. Tab 1, ECF No. 146–2. Shortly after sending the email, Raimondo entered Moore's office and asked whether he had read it. *Id.* Moore asserts that when he responded that he had not, Raimondo directed him to stop what he was doing and read the email. *Id.* Afterward, Moore sent Raimondo an email asking whether other sales trainers had been given the same instructions. *Id.* Raimondo forwarded Moore's email, along with an explanation of the incident, to Gary Schoenberger. *See id.*

Abbott argues that the incident does not rise to the level of an adverse employment action. It notes that Moore admits mispronouncing the term "Glucokinase." The term was particularly significant, Abbott explains, because it was the name of the enzyme that was the primary target of Glucerna, the Abbott product Moore was presenting. Abbott asserts, and Moore does not dispute, that mispronunciation of such terms when making a presentation to a healthcare professional undermines a sales representative's credibility. Thus, Abbott suggests, counseling was warranted.

Aside from Moore's gratuitous characterization of the incident as harassing and humiliating, the counseling Raimondo provided Moore was well within the realm of normal interaction between a supervisor and an employee. Raimondo's email to Moore

is entirely unremarkable: it is not harassing, intimidating, or in any way unprofessional. *See* Pl.'s Mem. Opp'n App. Tab 130, ECF No. 146–131. And, once again, Moore's attempt to show disparate treatment falls short because he fails to describe the circumstances of the alleged comparable incident involving the purported similarly situated co-worker. Viewing the evidence in the light most favorable to Moore, the Court finds as a matter of law that the coaching Raimondo provided Moore would not have deterred a reasonable employee from engaging in a protected activity. No materially adverse employment action occurred in this instance. In addition, Moore has failed to rebut Abbott's legitimate, non-retaliatory reason for Raimondo's conduct. Accordingly, the Court grants summary judgment in Abbott's favor with respect to Moore's claim that he suffered retaliation when his supervisor provided him guidance to help him prepare for the Phoenix Regional Meeting.

### 9. Criticism Concerning Performance at Phoenix Regional Meeting

Moore also maintains that the feedback his supervisors provided him after the Phoenix regional meeting constituted unlawful retaliation. Moore made several presentations at the regional meeting. He indicates that his supervisor, Gary Schoenberger, attended the presentations and took notes. Afterward, Schoenberger sent an email to Moore evaluating Moore's performance at regional meeting. Pl.'s Mem. Opp'n App. Tab 133, ECF No. 146–134. Schoenberger began the email by remarking that Moore was better prepared for the presentations than he had been in the past. *Id.* Nonetheless, Schoenberger gave Moore an overall rating of "PA" or "partially achieved." *Id.* Several paragraphs offering suggestions for improvement followed. *Id.* For example, Schoenberger indicated that Moore should have spent

more time on certain subjects. *Id.* Schoenberger also expressed concern that at several points Moore was "talking down" to his audience as though they were a class of new hires. *Id.* At the conclusion of the email, Schoenberger exhorted Moore to take steps to quickly improve his performance because a national meeting was a few months away, and indicated that Raimondo would provide the support he needed to accomplish that goal. *Id.* Moore's reaction to his supervisor's email was to send Schoenberger a reply email about one week later that "responded to every point that Schoenberger made with a reasonable explanation which vehemently disagreed with every criticism." Pl.'s Mem. Opp'n 41, ECF No. 146.

Abbott maintains that Schoenberger's feedback does not constitute a materially adverse employment action. The Court agrees. The feedback in this instance is roughly akin to a performance evaluation, though probably less consequential. In general, a poor performance evaluation does not rise to the level of a materially adverse employment action unless it significantly impacts an employee's wages or professional advancement. *See James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007). There is no evidence of such a negative impact in the instant case. In addition, since the *Burlington* standard is objective rather than subjective, it is of little moment that Moore "vehemently," that is, subjectively, disagreed with Schoenberger's observations and suggestions for improvement. Although critical, Schoenberger's email evaluation is constructive and professional in tone. The ADEA's anti-retaliation provision does not require an employer to refrain from providing critical feedback of this sort. *See Russell v. Ohio Dept. of Admin. Servs.*, 302 F. App'x 386, 393 (6th Cir. 2008) (fact that employee filed EEOC claim does not immunize her from all negative feedback

in the workplace). In sum, Schoenberger's note-taking and email would not have

caused a reasonable employee to refrain from making or supporting a charge of

discrimination. Consequently, Abbott is entitled to summary judgment on Moore's

retaliation claim concerning criticism of his performance at the Phoenix regional

meeting.

### 10. Disparate Treatment in Assignment of Products

Moore also claims to have suffered retaliation in the form of disparate

assignment of products. He contends that his supervisor Natasha Raimondo changed

his product assignments. Moore Dep. 53, ECF No. 136–11. Moore acknowledges that

Raimondo also changed other sales trainers' product assignments, but asserts that for

the most part their major products stayed the same so they were able to polish their

presentations on those products. *Id.* at 54. In addition, Moore alleges that Raimondo

assigned him older products and products that did not sell well, but would assign newer

products to younger sales trainers. *Id.* at 56, 58. Moore surmises that Raimondo did

so to put the younger sales trainers in the "limelight" because, unlike Moore, the

younger sales trainers were being groomed for management positions. *Id.* at 55–56.

Abbott argues the product assignments did not constitute adverse employment

actions. It argues that Moore has failed to show that products were assigned to him or

changed in a manner that was materially different from the assignments of his peers.

Abbott also contends that legitimate, non-discriminatory reasons existed for the

assignments. Natasha Raimondo explains:

> Q. Did the assignments change during the duration while you were
> there from 2006 to February 2008?
> A. Oh, yes.

> Q. And who made those changes?
> A. We worked collaboratively. I made suggestions on what I thought was a good plan of action, and I posed those changes to the group and gathered feedback. I also have received requests from marketing managers on who they want or don't want for sales trainers for their group. I've gotten requests to have Beverly as part of the brand team. I was stopped by a brand manager, Paul Spiegler, who said, "I don't want Bill on my brand team."
> . . .
> But what really gets a lot of weight is the trainers' responses to what they would enjoy having for products. So I might have an idea, I think this would work based on workload. You don't want to give everyone the hard products. You want the workload to be evenly distributed, and at the same time you want the sales trainers to have passion and interest in the products that they are covering, so that's why I pose it to them and then get feedback.

Raimondo Dep. 187–89, ECF No. 116–71.  Thus, Raimondo asserts that she assigned

products on the basis of a variety of factors, none of which implicate age.

Moore's product assignment claim is unique among the alleged incidents

because Moore appears to assert that the disparate treatment was on the basis of age

rather than protected activity.  Moore suggests as much when he refers to the other

sales trainers as "younger" and opines that his younger associates were being

developed for management.  The designation of the claim as one for age discrimination

or retaliation, or both, has some significance because the standard for demonstrating

an adverse employment action is somewhat more relaxed for retaliation than it is for

age discrimination.  See Burlington, 548 U.S. at 67.  In any event, application of the

more lenient standard for retaliation leads to the conclusion that the assignment of

products was not materially adverse.

The only adversity Moore expresses that resulted from the alleged disparate

assignments was that they placed the younger sales trainers in the limelight, and that

that was done as part of an effort to groom them for management.  But Moore's

statements in this regard are based on pure speculation. He presents no evidence, other than his subjective theory, that the assignments had anything to do with developing the other sales trainers to become managers. Furthermore, as Abbott notes, Moore has expressly disavowed any interest in management. Moore Dep. 230, ECF No. 136–11. Consequently, any failure of Abbott to put Moore on a management track would not have dissuaded a reasonable employee with the same goals as Moore from engaging in protected activity. On this basis alone, Abbott is entitled to summary judgment in its favor with respect to Moore's disparate product assignments claim.

In addition, Moore makes no effort to refute Abbott's assertion that product assignments were made based on factors unrelated to age or protected activity, such as manager requests, sales trainers' preferences, and an effort to distribute the workload evenly. Moore's failure to demonstrate pretext is also fatal to his claim. For these reasons, the Court grants summary judgment in Abbott's favor on Moore's disparate product assignments claim.

### 11. 2006 Performance Review

Moore next asserts that Abbott retaliated against him by giving him a "partially achieved" rating for his 2006 performance review. The rating affected Moore's salary, resulting in a reduction of his merit increase. "[M]arkedly lower performance-evaluation scores that *significantly* impact an employee's wages or professional advancement are also materially adverse." *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 433 (6th Cir. 2007) (emphasis added); *see also James*, 243 F. App'x at 79. Moore does not indicate the degree to which his merit increase was reduced as a result of the "partially achieved" rating, so it is not possible to determine whether the impact of the rating was

significant. Nonetheless, Abbott does not argue that the partially achieved rating was not a materially adverse employment action, so the Court will assume that Moore satisfies that element.

Abbott advances two grounds for summary judgment with respect to Moore's claim concerning his 2006 evaluation. First, Abbott contends that Moore is unable to establish a causal connection between his protected activity and his 2006 performance evaluation. Second, Abbott maintains that Moore cannot rebut Abbott's legitimate, non-retaliatory reason for assigning him a partially achieved rating.

To establish a prima facie case of retaliation, Moore must prove that a causal connection exists between the protected activity and the alleged retaliation. *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008). "Causation can be inferred from indirect or circumstantial evidence, including 'evidence that [the] defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'" *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Abbott argues Moore is unable to establish a causal connection with respect to his 2006 performance evaluation because the evaluation did not occur until March 2007, well over a year after Moore filed the instant lawsuit. Abbott cites two Sixth Circuit decisions in support of its argument: *Russell v. Ohio Dept. of Admin. Servs.*, 302 F. App'x 386, 393 (6th Cir. 2008) (summary judgment affirmed where plaintiff made no attempt to link negative performance review to her EEOC claim—fact that employee filed EEOC claim does not immunize her from all negative feedback in the workplace);

and *Sullivan v. Coca-Cola Bottling Co. of Ohio/Ky*, 182 F. App'x 473, 480 (6th Cir.

2006) (summary judgment affirmed where plaintiff put forward no evidence to establish

causation).

Moore contends his protected activity is not limited to the filing of the instant

lawsuit in October 2005. He maintains his protected activities include:

(1) correspondence to Ross Products President Gary E. McCullough and Vice

President of Human Resources Essex Mitchell in August 2006 concerning Abbott's

alleged failure to give him priority consideration, (2) testifying at his deposition on

September 7, 2006, and (3) filing an amended complaint in the instant case on October

13, 2006.

Although Moore does not raise the issue, and has therefore waived it, the Court

notes that some courts have concluded—albeit without analysis—that the causation

element is satisfied when an adverse employment action occurs while a discrimination

lawsuit or EEOC complaint is pending. *See, e.g., Singleton v. Mukasey,* No. 06 Civ.

6588, 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008) (stating in dicta that failure to

promote while a discrimination lawsuit was pending was sufficient to allow jury to

conclude that adverse action was in retaliation for ongoing lawsuit); *Gbenoba v.

Montgomery Cnty. Dept. of Health and Human Servs.*, No. Civ. A. 2003-2231, 2005 WL

1490008, at *5 (D. Md. June 23, 2005) (stating in dicta that prima facie case of

retaliation was established where plaintiff was denied promotion while EEOC complaint

was pending); *Patrick v. Ridge*, No. Civ. A. 301CV0152P, 2004 WL 42609, at *7 (N.D.

Tex. Jan. 6, 2004) (stating in dicta that denial of promotion while discrimination lawsuit

was pending demonstrated causal link), *rev'd on other grounds*, 394 F.3d 311 (5th Cir.

2004); *Johnson v. Maddox*, 230 F. Supp. 2d 1, 10 (D.D.C. 2002) (concluding that

termination while plaintiff's class action lawsuit was pending supported finding of

causation for retaliation claim). At least one court has rejected that approach, opining

that the mere pendency of a lawsuit filed long before an adverse employment action

does not constitute "continuing" protected activity for purposes of measuring causation.

*Gray v. City of Montgomery*, — F. Supp. 2d —, No. 2:09–cv–520–MHT, 2010 WL

513579, at *9 (M.D. Ala. Dec. 9, 2010). Unlike the aforementioned decisions, the

opinion in *Gray* offers some analysis of the issue. The court explained:

> Gray further contends the causal-connection requirement is satisfied because her lawsuit itself constitutes a "continuing" protected activity, with the result that the lawsuit and any adverse action occurring at any time during the pendency of the lawsuit, no matter how long after filing, would have occurred simultaneously. The court rejects Gray's argument for two reasons. First, as stated, "[a] prima facie case . . . raises an inference of discrimination only because we presume these acts, if *otherwise unexplained*, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, (1978) (emphasis added). Gray has failed to explain why, for an adverse action that occurred perhaps years after a lawsuit or complaint was filed, the inference of discrimination should apply just because the lawsuit was still pending. It can be reasonably assumed that a defendant would be angry upon first learning that a lawsuit charging racial discrimination had been filed against him and that any adverse action taken against the filer immediately after the filing is tied to that anger; however, the tie is too attenuated and the assumption has no reasonable basis when the adverse action comes years, or even many years, later. Second, if the court were to accept Gray's argument, it would follow that not only a lawsuit but an EEOC charge (or for that matter any and all internal administrative complaints) would constitute a continuing protected activity, with the result that, for all adverse actions taken while the charge or complaint was pending, the causal-connection requirement would be satisfied. Gray's argument would then essentially eviscerate, in those instances where a lawsuit or complaint was the protected activity, the whole causal-connection requirement that "mere temporal proximity, without more, must be 'very close.'" *Thomas*, 506 F.3d at 1364 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

2010 WL 5137579, at *9. The Court finds the analysis of *Gray* persuasive, especially

as it would apply to the facts of the instant case, in which Abbott rehired Moore *after* he filed the present lawsuit.  *See Villavicencio v. Camoplast Croker LLC*, No. 1:09–cv–513, 2010 WL 4318897, at *7 (W.D. Tenn. Oct. 22, 2010) (noting intervening event negated inference of causation in retaliation case).  Nonetheless, the Court need not resolve the issue because Moore does not argue that pendency of his lawsuit by itself establishes causation.

Moore does point, however, to protected activity which occurred in September and October 2006.  The court in *Gray* recognized that new instances of  protected activity—such as giving a deposition—may occur while a lawsuit is pending.  2010 WL 513579 at *10.

The performance evaluation was not issued until March 29, 2007, almost six months after Moore filed his amended complaint, more than six months after his deposition, and more than seven months after his correspondence to management.  Temporal proximity alone establishes causation, if ever, only in rare cases in which the adverse employment action occurred "very close in time" after the employer learned of the protected activity.  *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008).  Passage of more than a few months requires additional evidence of causation.  *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 629 (6th Cir. 2008); *Mullins v. Goodman Dist., Inc.*, 694 F. Supp. 2d 782, 792 (S.D. Ohio 2010).  More than a few months passed in the instant case between the protected activities and the alleged adverse employment action.  In these circumstances, the Court finds that causation is not established by temporal proximity in the absence of additional evidence.

Moore argues that additional evidence establishes causation.  He contends the

causation element is satisfied because harassment, retaliation and disparate treatment began on the first day he returned to work and continued until he resigned two years later. Several of the instances of alleged retaliation and alleged disparate treatment occurred between the time Moore began working on March 20, 2006 and his 2006 performance review which took place on March 29, 2007. Moore was assigned a small office and Hysell failed to shake his hand on his first day of work after Abbott rehired him. In May 2006, Cindy Foster directed Moore to stop discussing his lawsuit with other employees. Also in May 2006, co-worker Deb Foley allegedly made disparaging comments about Moore's past sales performance. Moore's supervisors coached and critiqued him before and after the October 2–3, 2006 regional meeting. The organizational chart was issued on January 9, 2007. Monica Hysell failed to introduce Moore to a colleague on March 12, 2007. The purported disparate assignment of products allegedly began soon after Moore was rehired and continued until Moore resigned. It is unclear whether the assignment of the trainee graduation remarks or the tight project deadline occurred prior to the 2006 review. The incidents comprise a series of minor slights, trivial annoyances, and normal workplace interactions and frictions spread out over the course of a year. Even viewed collectively, they do not tend to show that the 2006 review was causally related to any protected activity. In addition, there is no evidence establishing that any of the incidents were themselves causally related to protected activity. Viewing the totality of the circumstances, the incidents Moore raises do not constitute "other evidence" that would support a finding that the "partially achieved" rating on his 2006 performance review was causally related to protected activity.

Furthermore, Moore fails to establish the element of knowledge. Although the record may support a finding that the supervisors who conducted the 2006 performance evaluation were aware he filed a lawsuit more than a year earlier before he was re-hired, there is no evidence that they had knowledge of either his deposition or amended complaint.

Lastly, Moore's correspondence with McCullough and Mitchell in August 2006 does not amount to protected activity. Moore does not provide any cite to the correspondence in the record in his Memorandum in Opposition. *See* Pl.'s Mem. Opp'n 28, ECF No. 146. The Court has no duty to comb the voluminous record to find the correspondence in question. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001); *Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010). Nonetheless, the Court surmises that the letter in question is attached as Appendix Tab 110 to Moore's Memorandum in Opposition. Pl.'s Mem. Opp'n App. Tab 110, ECF No. 146–111. The correspondence expresses Moore's perception that Abbott failed to fulfill its obligation to give him priority consideration as a laid-off employee. *Id.*; *see* Am. Compl. ¶¶ 10, 11, ECF No. 23; Moore Dep. 223, ECF No. 136–10; Moore Aff. ¶ 76. The letter makes no mention of alleged age discrimination, either directly or indirectly. Without such a reference, the letter does not constitute a protected activity.

For all of the above reasons, the Court finds that Moore cannot establish a prima facie case of retaliation with respect to his 2006 performance evaluation. It is therefore unnecessary to determine whether Moore can establish that Abbott's non-retaliatory reasons for the "partially achieved" rating were pretextual. Abbott is entitled to summary judgment in its favor with respect to Moore's claim that his 2006 performance

review constituted retaliation.

### 12. 2007 Performance Review

Moore also received a "partially achieved" overall rating on his 2007 performance review, which he received in February 2008. Moore alleges that rating constituted retaliation for filing his age discrimination lawsuit.

Abbott argues Moore has failed to establish the element of causation for any of the alleged instances of retaliation, including the 2007 performance review. Although Moore filed an amended complaint in this action in October 2007, he does not argue temporal proximity or attempt to establish that the supervisors whose names appear on the review, Raimondo and Steven Barclay, were aware of the amended complaint. Notably, with regard to "other evidence" of causation, there appear to have been fewer instances of alleged retaliation or harassment between the 2006 and 2007 performance reviews. The same principles discussed above in connection with Moore's 2006 performance review apply to the 2007 evaluation. The Court finds that Moore has failed to establish the element of causation with respect to his claim that the "partially achieved" rating he received for his 2007 performance review was a form of retaliation for engaging in protected activities. Accordingly, the Court grants summary judgment in favor of Abbott on Moore's retaliation claim based upon his 2007 performance evaluation.

Finally, the Court will consider whether considering all of the instances of alleged retaliation together establishes actionable retaliation. *See Lahar v. Oakland Cnty.*, 304 F. App'x 354, 358–59 (6th Cir. 2008). The Court finds that, with the possible exceptions of his performance evaluations, the alleged instances of retaliation, viewed collectively,

were not materially adverse. As noted above, Moore has failed to show that the

performance evaluations are causally related to any protected activity. Considering the

totality of the circumstances, and viewing the evidence in the light most favorable to

Moore, the Court finds that the record does not, as a matter of law, support an

inference that Abbott retaliated against Moore because he engaged in protected

activity. For all of the above reasons, Abbott is entitled to summary judgment on

Moore's claim of unlawful retaliation.

## D. RETALIATORY HARASSMENT

Although the parties mention harassment at various points in their memoranda,

they fail cogently to distinguish between adverse employment action retaliation and

retaliatory harassment. Retaliation in the form of adverse employment action and

retaliation in the form of hostile work environment are distinct legal theories. *Morris v.*

*Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000); *Allen v. Ohio Dept. of Job*

*and Family Servs.*, 697 F. Supp. 2d 854, 902–03 (S.D. Ohio 2010).

To succeed on a workplace harassment claim, a plaintiff must demonstrate "'the

workplace is permeated with [retaliatory] intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 608

(6th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The test

entails both objective and subjective elements. Thus, a plaintiff must show that the

conduct was "severe or pervasive enough to create an objectively hostile or abusive

work environment-an environment that a reasonable person would find hostile or

abusive . . . ." *Id.* In addition, a plaintiff must establish that he subjectively perceived

the environment to be abusive.[4]  *Id.*  The Court must examine the totality of the circumstances to determine whether the work environment was hostile.  *Harris*, 510 U.S. at 23.  Relevant factors may include (1) the frequency of the harassing conduct; (2) the severity of the harassing conduct; (3) whether the harassing conduct was physically threatening or humiliating, or merely offensive speech; and (4) whether the harassing conduct unreasonably interfered with the employee's work performance.  *Id.*  "Simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Rather, to change the terms and conditions of employment, the "conduct must be extreme."  *Id.*

The Court finds the alleged harassment was not pervasive.  To reiterate, Moore complains about the location and size of his office, his alleged exclusion from meetings, the failure of a sales trainer to shake his hand on one occasion, a single incident of a manager failing to introduce Moore to another employee, one organizational chart that listed Moore at the bottom, a single demand that Moore stop talking about his lawsuit to other employees, a co-worker's single negative comment about Moore's past work performance, assigning Moore to make introductory comments at trainee graduations without prepared notes on more than one occasion, a tight deadline for an assignment which required Moore to work late on one occasion, coaching and critical feedback before and after the Phoenix Regional Meeting, assignment of some older products and products that did not sell well, and receiving "partially achieved" ratings for his 2006 and

---

[4]Moore avers he felt humiliated by most of the incidents.  He therefore satisfies the subjective component of the harassment test.

2007 performance reviews.  Those alleged instances of harassment took place over a period of two years.  The only incidents that arguably had any adverse consequence—the "partially achieved" ratings—took place nearly a year apart.  Even viewed in the light most favorable to Moore, the alleged harassment was not pervasive.  *See Clay v. United Parcel Servs., Inc.*, 501 F.3d 695, 707–08 (6th Cir. 2007) (finding fifteen incidents in two-year period did not demonstrate pervasive harassment).

Nor was the alleged harassment severe.  The incidents about which Moore complains range from the trivial to the unremarkable.  A person of ordinary sensibility would not have found the incidents of alleged harassment to have been severe.  Furthermore, although a reasonable employee might have been surprised, taken aback, slightly embarrassed, or disappointed about some of the incidents, he would not have found them humiliating.  In addition, while some of the alleged harassment may have caused minor inconveniences, such as the location of Moore's office and having to work late on a project, the evidence does not support a finding that the alleged harassment *unreasonably* interfered with Moore's work performance.  In sum, under an objective standard, the alleged harassment was not severe or extreme.

Viewing the totality of the circumstances, the Court finds as a matter of law that Moore has failed to demonstrate that the workplace at Abbott was permeated with retaliatory intimidation, ridicule, and insult that was so severe or pervasive as to create an abusive working environment that altered the terms and conditions of Moore's employment.  *See Russell*, 537 F.3d at 608.  Consequently, the Court grants summary judgment in favor of Abbott on Moore's retaliatory harassment claim.

## V. CONSTRUCTIVE DISCHARGE

Moore also asserts a claim for constructive discharge. He contends conditions

at Abbott were so intolerable that he was compelled to resign. Abbott argues Moore

fails to meet the standard for constructive discharge.

To establish a claim of constructive discharge, a plaintiff must demonstrate

(1) the employer deliberately created working conditions which a reasonable employee

standing in the plaintiff's shoes would find so intolerable that they would have felt

compelled to resign, and (2) the employer did so intending to force the plaintiff to quit

his job. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566–69 (6th Cir. 2001); *see also Ross v.*

*Pfizer, Inc.*, 375 F. App'x 450, 457 (6th Cir. 2010). The Sixth Circuit has adopted a

multi-factor test to assist in the determination of whether working conditions were

objectively intolerable:

> Whether a reasonable person would feel compelled to resign depends on the
> facts of each case, but we consider the following factors relevant, singly or
> in combination: (1) demotion; (2) reduction in salary; (3) reduction in job
> responsibilities; (4) reassignment to menial or degrading work; (5)
> reassignment to work under a younger supervisor; (6) badgering,
> harassment, or humiliation by the employer calculated to encourage the
> employee's resignation; or (7) offers of early retirement or continued
> employment on terms less favorable than the employee's former status.

*Ross*, 375 F. App'x at 457 (quoting *Logan*, 259 F.3d at 569 (quoting *Brown v. Bunge*

*Corp.*, 207 F.3d 776, 782 (5th Cir. 2000))).

In the instant case, there was no demotion. No reduction in salary occurred,

although the "partially achieved" ratings apparently reduced Moore's merit increase by

an unspecified amount. Moore does not allege reduction in job responsibilities.

Although Moore claims he was assigned to train on some products that were old or did

not sell well, even he does not characterize those assignments as menial or degrading. Moore was not "reassigned" to work under a younger supervisor. While he maintains he was harassed and humiliated, this was not the case when the evidence is viewed under an objective standard. Moore has not presented evidence of "offers of early retirement or continued employment on terms less favorable than the employee's former status." *Ross*, 375 F. App'x at 457 (internal quotations omitted). Viewed together, the factors do not add up to intolerable circumstances.

In addition to the above factors, the Court notes that most of the incidents about which Moore complains apparently occurred during the first year after he was rehired. In this sense, the alleged harassment appears to have diminished significantly before Moore indicates he felt compelled to resign.

The Court also considers the nature of the event that triggered Moore's resignation, namely, the second "partially achieved" rating. A reasonable employee in Moore's shoes would no doubt have been disappointed by the rating, but would not have felt compelled to resign. Moore, however, was apparently so completely devastated that he experienced chest pains and was later admitted to a hospital. While the Court is sympathetic to Moore's emotional and physical reaction to the circumstances, it must adhere to the objective standard.

Considering the totality of the circumstances, the Court concludes that Moore has failed to demonstrate working conditions at Abbott were so intolerable that a reasonable employee in Moore's position would have felt compelled to resign. For this reason alone, Abbott is entitled to summary judgment in its favor on Moore's constructive discharge claim.

Lastly, as an alternative basis for summary judgment, the Court further finds that Moore has failed to show that Abbott intended to force Moore to quit his job. The finding is based on several factors, including the less-than-severe nature of the alleged harassment, the general lack of evidence that any of the alleged harassment was causally related to Moore's protected activities, as well as the fact that the alleged instances of harassment appear to have become less frequent in Moore's second year of re-employment. Moreover, the Court notes the speculative nature of Moore's overarching theory: that Abbott rehired him *after* he filed his lawsuit, only to engage in a calculated two-year campaign of harassment to force him to resign. The time, expense, and risks of such an endeavor render it counterintuitive. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (considering the counterintuitive nature of predatory pricing scheme in the context of summary judgment).

In sum, Moore has failed as a matter of law to establish constructive discharge. Accordingly, the Court grants summary judgment to Abbott on Moore's claim that Abbott constructively discharged him.

## VI. DISPOSITION

Based on the above, the Court **GRANTS** Abbott's summary judgment motion in part and **DENIES** it in part. ECF No. 116. The Court **DISMISSES** all of Moore's claims **WITH PREJUDICE** except for his claim that Abbott failed to hire him for Requisition No. 31917 because of his age.

The Court will set this matter for trial in Fall 2011 by seperate order.

The Clerk shall remove ECF No. 116 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**